**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| STATE OF UTAH, *by and through its Governor*, SPENCER J. COX, *and its Attorney General*, SEAN D. REYES, *et al.*,<br><br>        Petitioners,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY *and* MICHAEL S. REGAN, *Administrator*, U.S. EPA,<br><br>        Respondents. | No. 23-1102 |
| STATE OF UTAH, *by and through its Governor*, SPENCER J. COX, *and its Attorney General*, SEAN D. REYES, *et al.*,<br><br>        Petitioners,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY *and* MICHAEL S. REGAN, *Administrator*, U.S. EPA,<br><br>        Respondents. | No. 24-1040 |
| STATE OF OKLAHOMA, *by and through its Attorney General*, GENTNER F. DRUMMOND, *et al.*,<br><br>        Petitioners, | Nos. 24-1043 |

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY *and* MICHAEL S. REGAN,
*Administrator*, U.S. EPA,

Respondents.

## UTAH AND OKLAHOMA PETITIONERS'
## MOTION TO GOVERN FUTURE PROCEEDINGS

Sean D. Reyes
    *Attorney General of Utah*
Stanford E. Purser
    *Utah Solicitor General*
    *Counsel of Record*
Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, UT 84114-2320
801-538-9600
spurser@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW LLC
1629 K Street, NW, Suite 300
Washington, D.C. 20006
302-300-0388
William_Wehrum@comcast.net

*Attorneys for Petitioner State of Utah*

Gentner F. Drummond
    *Attorney General of Oklahoma*
Garry M. Gaskins, II
    *Solicitor General*
Zach West
    *Director of Special Litigation*
Jennifer L. Lewis
    *Assistant Attorney General*
Office of Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
405-521-3921
garry.gaskins@oag.ok.gov

*Attorneys for Petitioner State of
Oklahoma, by and through its Attorney
General, Gentner F. Drummond, and
Oklahoma Department of Environmental
Quality*

*Additional counsel listed on the signature page.

Petitioners the State of Utah, PacifiCorp, Deseret Generation & Transmission Co-Operative, Utah Municipal Power Agency, and Utah Associated Municipal Power Systems ("Utah Petitioners"); and State of Oklahoma, Oklahoma Department of Environmental Quality, Oklahoma Gas & Electric Company, Tulsa Cement LLC, Republic Paperboard, and Western Farmers Electric Cooperative ("Oklahoma Petitioners") file the following Motion in response to this Court's Order dated February 28, 2024 (Dkt. 2042800):

**Background.** Petitioners are challenging EPA's disapprovals of their respective state's state plans for implementing the Clean Air Act's "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I), with respect to the 2015 ozone national ambient air quality standards. They have been pursuing their primary challenges to those plans in the Tenth Circuit. But after EPA moved to transfer or dismiss those challenges based on venue, Petitioners also filed protectively in this Court to preserve their right to judicial review.

In an order issued on June 27, 2023, this Court held those protective petitions in abeyance while the primary challenges proceeded in the Tenth Circuit. *See* Order, No. 23-1102, Dkt. 2005201 (D.C. Cir. Jun. 27, 2023). In doing so, this Court rejected EPA's motion to expedite consideration of the protective petitions in this Court while the primary regional challenges were pending. *See id.*

Petitioners proceeded to fully brief their challenges in the Tenth Circuit in two sets of consolidated cases, one for the challenges to EPA's disapproval of the Utah state implementation plan and one for the challenges to EPA's disapproval of the Oklahoma state implementation plan. Then, on February 27, 2024, the Tenth Circuit issued an opinion holding that venue was proper in this Court, not in the Tenth Circuit. *Oklahoma v. EPA*, 93 F.4th 1262 (10th Cir. 2024). It accordingly transferred the cases to this Court. *Id.*

In light of that transfer, this Court requested that parties file motions to govern future proceedings concerning the transferred cases as well as the protective petitions that had been held in abeyance. *See* Order, Nos. 23-1102, 24-1040, 24-1043, Dkt. 2042800 at 2. Meanwhile, on March 28, 2024, Petitioners petitioned the U.S. Supreme Court for a writ of certiorari to review the Tenth Circuit's transfer decision, which conflicts with venue rulings from the Fourth, Fifth, Sixth, and Eighth Circuits. *See* Exhibit A (*Oklahoma v. EPA* petition for writ of certiorari); Exhibit B (*PacifiCorp v. EPA* petition for writ of certiorari).

## **Motion to Govern**

**A. Abeyance.** This Court should continue to hold Petitioners' consolidated cases in Docket No. 23-1102 in abeyance for an additional 90 days, and also hold the transferred cases in Docket Nos. 24-1040 and 24-1043 in abeyance, while the Supreme Court decides whether to grant to the Petitioners' petitions for writ of

certiorari seeking review of the Tenth Circuit's transfer order. Petitioners acted expeditiously in seeking Supreme Court review. Although the deadline for filing the petitions for writ of certiorari was May 27, 2024, Petitioners filed them nearly two months early, on March 28, 2024. Petitioners filed their petitions two months early to allow the Supreme Court to consider the petitions before its summer recess. That will, in turn, allow the Supreme Court to adjudicate the petitions within this 90-day period.

Accordingly, holding these cases in abeyance for 90 days should allow this Court to consider the next steps forward with considerably more clarity regarding the venue issues. The parties can then file new motions to govern at that time in light of the Supreme Court's decision. If the Supreme Court grants review, then a longer abeyance would clearly be in order. If the Supreme Court denies review, then it will be clear that these cases should move forward.

This short additional abeyance makes sense because the Supreme Court is likely to grant review. As the Tenth Circuit acknowledged in its opinion, there is now a division of authority on the venue question between the Tenth Circuit and multiple other courts of appeals. *Oklahoma*, 93 F.4th at 1268 ("We recognize that the Fourth, Fifth, and Sixth Circuits recently reached the contrary conclusion: each denied the EPA's motions to transfer petitions challenging the same final rule at issue here."); *see also id.* at 1268 n.7 ("The Eighth Circuit also denied the EPA's

transfer motions[.]"). That square circuit split clearly satisfies the Supreme Court's standard for granting review. *See* Sup. Ct. R. 10(a). Indeed, the Supreme Court granted certiorari before judgment in an analogous case in *National Association of Manufacturers v. Department of Defense*, 583 U.S. 109 (2018), where there was a division of authority as to the proper court for adjudicating the legality of an administrative rule defining the term "waters of the United States" under the Clean Water Act, *id.* at 113-14. There is thus good reason to believe that the Supreme Court will similarly grant Petitioners' request that the Supreme Court review the Tenth Circuit's ruling.

Moreover, disrupting the abeyance status quo would potentially waste the parties' and the Court's resources on cases that may ultimately be decided elsewhere if Petitioners prevail on their venue arguments at the Supreme Court. A short, 90-day abeyance period would avoid that possibility.

**B. Consolidation.** Petitioners oppose EPA's request to consolidate all remaining challenges apart from that of Nevada Cement's protective filing (No. 23-1115). There is no need for the Court to do anything—consolidation or otherwise—if it continues to keep the cases abated as Petitioners request. The usual course in that instance would be to maintain the status quo until the abeyance is lifted. That would be the point at which to consider procedural issues like consolidation or intervention.

In any event, consolidation would not make sense even when that abeyance is lifted. The Utah and Oklahoma Petitioners' separate challenges should proceed on a state-specific basis due to the unique procedural posture and issues involved for each state group. State implementation plans are by nature state specific. And the Tenth Circuit consolidated the challenges on a state-specific basis and merits briefing was completed separately for Utah Petitioners and Oklahoma Petitioners prior to transfer. *See* Order, *Oklahoma v. EPA*, No. 23-9514, Doc. 010110866208 (10th Cir. May 30, 2023); Order, *Utah v.* EPA, No. 23-9509, Doc. 010110866083 (10th Cir. May 30, 2023). The Nevada challenges have never been briefed, and the Ninth Circuit has retained jurisdiction over those challenges. This Court should retain the state-specific approach that has dictated prior proceedings in these challenges.

**C. Briefing Schedule.** Given the pending petitions for writ of certiorari and Petitioners' request for a 90-day abeyance, it is premature to propose a briefing schedule. If the Supreme Court grants review, the Petitioners will request abeyance pending the Supreme Court's decision, and no briefing schedule will be necessary. If the Supreme Court denies review, the parties can then propose a briefing schedule for these cases.

DATED: March 29, 2024

Respectfully Submitted,

*/s/ Stanford E. Purser*
Sean D. Reyes
    *Attorney General of Utah*
Stanford E. Purser
    *Solicitor General*
    *Counsel of Record*
Office of the Attorney General
160 E. 300 S., 5th floor
Salt Lake City, UT 84111
801-366-0533
spurser@agutah.gov

William L. Wehrum
WEHRUM ENVIRONMENTAL LAW LLC
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
302-300-0388
William_Wehrum@comcast.net

Emily C. Schilling
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com

Kristina (Tina) R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107 / Fax 720-545-9952
trvanbockern@hollandhart.com
abtucker@hollandhart.com

*Attorneys for Petitioner State of Utah*

*/s/Steven J. Christiansen*
Steven J. Christiansen
David C. Reymann
PARR BROWN GEE & LOVELESS, PC
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
schristiansen@parrbrown.com
dreymann@parrbrown.com

*Attorneys for Petitioner Deseret Generation & Transmission Co-Operative*

*/s/Misha Tseytlin*
Misha Tseytlin
        *Counsel of Record*
Kevin M. Leroy
Emily A. O'Brien
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street Suite 3900 Chicago, IL 60606
608-999-1240 (MT)
312-759-1938 (KL)
312-759-5939 (EO)
312-759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com
emily.obrien@troutman.com

Carroll Wade McGuffy III
Melissa Horne
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree St. N.E. Suite 3000 Atlanta, GA 30308
404-885-3698 (CM)
404-885-3286 (MH)
mack.mcguffey@troutman.com
melissa.horne@troutman.com

Marie Bradshaw Durrant
*Assistant General Counsel*
Christian C. Stephens
*Senior Attorney*
PACIFICORP
1407 North Temple Suite 320 Salt Lake City, UT 84116
801-220-4707 (MD)
801-220-4526 (CS)
marie.durrant@pacificorp.com
christian.stephens@pacificorp.com

*Attorneys for Petitioner PacifiCorp*

/s/Artemis D. Vamianakis
H. Michael Keller
Artemis D. Vamianakis
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
801-531-8900
mkeller@fabianvancott.com
avamianakis@fabianvancott.com

*Attorneys for Petitioner Utah Associated Municipal Power Systems*

/s/Alan I. Robbins
Alan I. Robbins
Debra D. Roby
Thomas B. Steiger
WASHINGTON ENERGY LAW LLP
900 17th St. NW
Suite 500-A
Washington, D.C. 20006
703-785-9270
arobbins@washingtonenergylaw.com
droby@washingtonenergylaw.com
tsteiger@washingtonenergylaw.com

*Attorneys for Petitioner Utah
Municipal Power Agency*

*/s/ Michael B. Schon*
Michael B. Schon
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave NW
Washington, DC 20001
202-436-4811
512-693-8350
mike@lkcfirm.com


Mithun Mansinghani
LEHOTSKY KELLER COHN LLP
629 W. Main Street
Oklahoma City, OK 73102
512-693-8350
mithun@lkcfirm.com

*/s/ Garry M. Gaskins, II*
Gentner F. Drummond
    ATTORNEY GENERAL OF OKLAHOMA
Garry M. Gaskins, II
    SOLICITOR GENERAL
Zach West
    DIRECTOR OF SPECIAL LITIGATION
Jennifer L. Lewis
    ASSISTANT ATTORNEY GENERAL
Office of Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
 405-521-3921
garry.gaskins@oag.ok.gov

*Attorneys for Petitioner State of Oklahoma,
by and through its Attorney General,*

- 9 -

*Gentner F. Drummond, and Oklahoma Department of Environmental Quality*

*/s/ Megan Berge*
Megan Berge
Sarah Douglas
Baker Botts L.L.P.
700 K Street N.W.
Washington, D.C. 20001
415-291-6233
202-639-7733

J. Mark Little
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
713-229-1489

*Attorneys for Petitioners Oklahoma Gas and Electric Company, Tulsa Cement and Republic Paperboard, and Western Farmers Electric Cooperative*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the format and word limit of Fed. R. App. P. 27(d)(1)-(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 1,119 words. This document also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

DATED: March 29, 2024

*/s/  Megan Berge*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2024, I filed the foregoing response with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

DATED: March 29, 2024

*/s/ Megan Berge*

# Exhibit A

**No.**

# In the Supreme Court of the United States

STATE OF OKLAHOMA, OKLAHOMA DEP'T OF ENVIRON-
MENTAL QUALITY, AND STATE OF UTAH, PETITIONERS

*v.*

ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
RESPONDENTS

*ON PETITION FOR WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT*

**PETITION FOR WRIT OF CERTIORARI**

<table>
<tr><td>

Sean D. Reyes
  *Attorney General*
Stanford E. Purser
  *Solicitor General*
OFFICE OF THE UTAH
ATTORNEY GENERAL
Utah State Capitol
Complex
350 N. State St., Ste. 230
Salt Lake City, UT 84114

</td><td>

Gentner Drummond
  *Attorney General*
Garry M. Gaskins, II
  *Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*
OKLAHOMA ATTORNEY
GENERAL'S OFFICE
313 N.E. 21st Street
Okla. City, OK 73105

</td></tr>
<tr><td>

William L. Wehrum
WEHRUM ENVIRONMEN-
TAL LAW LLC
1629 K St., N.W., Ste. 300
Washington, D.C. 20006

</td><td>

Mithun Mansinghani
  *Counsel of Record*
LEHOTSKY KELLER COHN
  LLP

</td></tr>
</table>

*Additional Counsel Listed on Inside Cover*

Emily C. Schilling
HOLLAND & HART LLP
222 S. Main St., Ste. 2200
Salt Lake City, UT 84101

Kristina R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth St.,
Ste. 3200
Denver, CO 80202

*Counsel for Petitioner*
*State of Utah*

629 W. Main St.
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

Michael B. Schon
Drew F. Waldbeser
LEHOTSKY KELLER COHN
  LLP
200 Mass. Ave. N.W.
Washington, DC 20001

*Counsel for Petitioners*
*State of Oklahoma and*
*Oklahoma Department of*
*Environmental Quality*

## QUESTION PRESENTED

Under the Clean Air Act, each state must adopt an implementation plan to meet national standards, which EPA then reviews for compliance with the Act. *See* 42 U.S.C. § 7410. In 2023, EPA published disapprovals of 21 states' plans implementing national ozone standards. It did so in a single *Federal Register* notice. The Act specifies that "[a] petition for review of the [EPA's] action in approving or promulgating any implementation plan … or any other final action of the [EPA] under this Act … which is locally or regionally applicable may be filed only in" the appropriate regional circuit, while "nationally applicable regulations … may be filed only in" the D.C. Circuit. 42 U.S.C. § 7607(b)(1). Parties from a dozen states sought judicial review of their respective state plan disapprovals in their appropriate regional circuits.

The Fourth, Fifth, Sixth, and Eighth Circuits held that the implementation plan disapprovals of states within those circuits are appropriately challenged in their respective regional courts of appeals. In the decision below, the Tenth Circuit held that challenges to the disapprovals of Oklahoma's and Utah's plans can only be brought in the D.C. Circuit, explicitly disagreeing with the decisions of its sister circuits.

The question presented is:

Whether a final action by EPA taken pursuant to its Clean Air Act authority with respect to a single state or region may be challenged only in the D.C. Circuit because EPA published the action in the same *Federal Register* notice as actions affecting other states or regions and claimed to use a consistent analysis for all states.

### PARTIES TO THE PROCEEDING

Petitioners filed separate petitions for review of separate agency action in the court of appeals. Petitioners the State of Oklahoma, by and through its Attorney General, and the Oklahoma Department of Environmental Quality challenged EPA's disapproval of Oklahoma's state implementation plan. Petitioner the State of Utah, by and through its Governor, Spencer J. Cox, and its Attorney General, Sean D. Reyes, challenged EPA's disapproval of Utah's state implementation plan.

The Tenth Circuit procedurally consolidated Oklahoma's challenge with petitions challenging the same agency action filed by Oklahoma Gas & Electric Company, Tulsa Cement LLC, d/b/a/ Central Plains Cement Company LLC, Republic Paperboard Company, and Western Farmers Electric Cooperative.

The Tenth Circuit also procedurally consolidated Utah's challenge with petitions challenging the same agency action filed by PacifiCorp and Utah Associated Municipal Power Systems.

Respondent the Environmental Protection Agency was the respondent in each challenge in the Tenth Circuit.

(ii)

**RELATED PROCEEDINGS**

1. This Petition arises out of separate petitions for review of agency action that Oklahoma and Utah filed in the court of appeals seeking review of EPA's disapproval of their respective state implementation plans. *See Oklahoma v. EPA*, No. 23-9514 (10th Cir.); *Utah v. EPA*, No. 23-9509 (10th Cir.).

2. On May 30, 2023, the Tenth Circuit procedurally consolidated Oklahoma's and Utah's petitions with related challenges to the same agency action. Oklahoma's petition was consolidated with petitions filed by Okla. Gas & Elec. Company, Tulsa Cement LLC, d/b/a/ Central Plains Cement Company LLC, Republic Paperboard Company, and Western Farmers Electric Cooperative. *See Okla. Gas & Elec. v. EPA*, No. 23-9521 (10th Cir.); *Tulsa Cement LLC v. EPA*, No. 23-9533 (10th Cir.); *W. Famers Elec. Coop. v. EPA*, No. 23-9534 (10th Cir.). Utah's petition was consolidated with petitions filed by PacifiCorp and Utah Associated Municipal Power Systems. *See PacifiCorp v. EPA*, No. 23-9512 (10th Cir.); *Utah Assoc. Mun. Power Sys.*, No. 23-9520 (10th Cir.).

3. Because EPA sought to dismiss or transfer the above-referenced petitions filed in the Tenth Circuit, the Tenth Circuit petitioners also filed protective petitions in the D.C. Circuit. *Utah v. EPA*, No. 23-1102 (D.C. Cir.); *Oklahoma v. EPA*, No. 23-1103 (D.C. Cir.); *Okla. Gas & Elec. Co. v. EPA*, No. 23-1105 (D.C. Cir.); *Tulsa Cement LLC v. EPA*, No. 23-1106 (D.C. Cir.); *W. Farmers Elec. Coop. v. EPA*, No. 23-1107 (D.C. Cir.); *PacifiCorp v. EPA*, No. 23-1112 (D.C. Cir.).

4. On February 27, 2024, the Tenth Circuit transferred the challenges to the D.C. Circuit.

(iii)

TABLE OF CONTENTS

Question Presented ............................................................ i

Parties to the Proceeding ................................................. ii

Related Proceedings ........................................................ iii

Table of Appendices ........................................................ v

Table of Authorities ....................................................... vi

Introduction .................................................................. 1

Opinion Below ................................................................ 3

Jurisdiction ................................................................... 3

Statutory Provisions Involved .......................................... 4

Statement of the Case ...................................................... 4

      A. Statutory Background ........................................... 4

      B. Procedural History ............................................... 6

      C. Decision Below .................................................. 13

Reasons for Granting the Petition ................................. 14

  I.  The Tenth Circuit's decision below explicitly conflicts with the decisions of several other courts of appeal. ................................................. 15

  II.  The question of the appropriate venue for challenges under the Clean Air Act is ripe for review, important, and frequently recurring. ... 19

  III. The Tenth Circuit's decision is wrong. ............... 30

Conclusion .................................................................. 35

**TABLE OF APPENDICES**

APPENDIX A — OPINION OF THE UNITED
STATES COURT OF APPEALS FOR THE
TENTH CIRCUIT, FILED FEBRUARY 27,
2024 ..................................................................................1a

APPENDIX B — STATUTORY EXCERPTS............20a

TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
    705 F.3d 453 (D.C. Cir. 2013) ................1, 24, 29, 30-31

*AT&T Corp. v. FCC,*
    970 F.3d 344 (D.C. Cir. 2020) ....................................34

*ATK Launch Sys., Inc. v. EPA,*
    651 F.3d 1194 (10th Cir. 2011)....................................31

*Barnhart v. Thomas,*
    540 U.S. 20 (2003) ..........................................................31

*Calumet Shreveport Ref., L.L.C. v. EPA,*
    86 F.4th 1121 (5th Cir. 2023) .....................................26

*Chevron U.S.A. Inc. v. EPA,*
    45 F.4th 380 (D.C. Cir. 2022)...............................26, 31

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) .......................................................21

*Comm. for a Better Arvin v. EPA,*
    786 F.3d 1169 (9th Cir. 2015) ....................................32

*Dalton Trucking, Inc. v. EPA,*
    808 F.3d 875 (D.C. Cir. 2015) ..............................26, 29

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) .......................................................33

*EPA v. EME Homer City Generation, L.P.,*
    572 U.S. 489 (2014) ..................................................4, 25

*Harrison v. PPG Indus., Inc.,*
    446 U.S. 578 (1980) ........................................5, 6, 19, 30

*Hertz Corp. v. Friend,*
    559 U.S. 77 (2010) ..............................................2, 28, 30

(vi)

*Hunt Ref. Co. v. EPA*,
   90 F.4th 1107 (11th Cir. 2024) ...................................26

*Kentucky v. EPA*,
   No. 23-3216 (6th Cir. July 25, 2023) ......... 12, 16, 17, 18

*Mercantile Nat'l Bank v. Langdeau*,
   371 U.S. 555 (1963) .....................................................21

*Nat. Res. Def. Council v. EPA*,
   559 F.3d 561 (D.C. Cir. 2009) ...................................34

*Nat. Res. Def. Council v. EPA*,
   706 F.3d 428 (D.C. Cir. 2013) ...................................33

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   583 U.S. 109 (2018) ...........................................3, 20, 28

*Nat'l Parks Conservation Ass'n v. McCarthy*,
   816 F.3d 989 (8th Cir. 2016) .......................................31

*Navarro Sav. Ass'n v. Lee*,
   446 U.S. 458 (1980) ..................................................2, 27

*New York v. EPA*,
   133 F.3d 987 (7th Cir. 1998) .......................................24

*Obergefell v. Hodges*,
   135 S. Ct. 2584 (2015) .................................................21

*Oklahoma v. EPA*,
   93 F.4th 1262 (10th Cir. 2024) .....................................3

*S. Ill. Power Coop. v. EPA*,
   863 F.3d 666 (7th Cir. 2017) .......................................25

*Sierra Club v. EPA*,
   926 F.3d 844 (D.C. Cir. 2019) ...............................26, 29

*Texas Mun. Power Agency v. EPA*,
   89 F.3d 858 (D.C. Cir. 1996) .......................................26

(vii)

*Texas v. EPA*,
706 F. App'x 159 (5th Cir. 2017)............................25, 29

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016) ......................24, 29, 30, 35

*Texas v. EPA*,
983 F.3d 826 (5th Cir. 2020) ............................25, 27, 29

*Texas v. EPA*,
No. 23-60069, 2023 WL 7204840
(5th Cir. May 1, 2023).............. 10, 11, 16, 17, 18, 22, 23

*Train v. Nat. Res. Def. Council, Inc.*,
421 U.S. 60 (1975) ......................................................4, 5

*Travis v. United States*,
364 U.S. 631 (1961) ......................................................35

*Union Elec. Co. v. EPA*,
427 U.S. 246 (1976) ........................................................5

*W. Oil & Gas Ass'n v. EPA*,
633 F.2d 803 (9th Cir. 1980) ........................................25

*W. Virginia Chamber of Com. v. Browner*,
166 F.3d 336 (4th Cir. 1998) ........................................24

*West Virginia v. EPA*,
90 F.4th 323 (4th Cir. 2024).........2, 9, 16, 17, 18, 22, 23

**Statutes**

28 U.S.C. § 1254(1) ............................................................4

28 U.S.C. § 2101(e) ...........................................................4

42 U.S.C. § 7407(a) ............................................................5

42 U.S.C. § 7407(b)(1) .......................................................6

42 U.S.C. § 7409(a)-(b) ......................................................4

42 U.S.C. § 7409(d)(1) .................................................. 3, 24

42 U.S.C. § 7410 .............................................. 4, 5-6, 30, 33

42 U.S.C. § 7410(a) ........................................................ 4, 17

42 U.S.C. § 7410(a)(1) ..................................... 3, 5, 6, 10, 24

42 U.S.C. § 7410(a)(2)(D) ........................................ 1, 7, 24

42 U.S.C. § 7410(c)(1) ......................................................... 5

42 U.S.C. § 7410(k)(1) ...................................................... 10

42 U.S.C. § 7410(k)(2) ...................................................... 10

42 U.S.C. § 7410(k)(3) ................................................... 5, 17

42 U.S.C. § 7410(k)(5) ...................................................... 24

42 U.S.C. § 7607(b)(1) ......................... 1, 4, 5, 6, 9, 16, 17,
23, 27, 28, 30, 31, 33

44 U.S.C. § 1510(a)-(b) ..................................................... 34

**Rulemaking Notices and Regulations**

1 C.F.R. § 8.1 ..................................................................... 34

40 C.F.R. § 52.1922(c) ...................................................... 34

40 C.F.R. § 52.2354 ........................................................... 34

63 Fed. Reg. 57,356 (Oct. 27, 1998) ................................ 25

80 Fed. Reg. 65,292 (Oct. 26, 2015) .................................. 6

80 Fed. Reg. 75,706 (Dec. 3, 2015) ................................. 25

85 Fed. Reg. 20,165 (Oct. 11, 2020) ................................ 32

86 Fed. Reg. 68,413 (Dec. 2, 2021) .................................. 32

86 Fed. Reg. 73,129 (Dec. 27, 2021) ................................ 32

87 Fed. Reg. 9,798 (Feb. 22, 2022) ................................... 7

(ix)

87 Fed. Reg. 31,470 (May 24, 2022) ................................... 7

88 Fed. Reg. 9,336 (Feb. 13, 2023)........................ 8, 25, 34

89 Fed. Reg. 12,666 (Feb. 16, 2024)................................. 8

**Rules**

Sup. Ct. R. 11 ............................................................. 3, 19

(x)

**INTRODUCTION**

Five courts of appeals are in direct and acknowledged conflict over an important and recurring federal question about how to interpret the Clean Air Act's venue provision, 42 U.S.C. § 7607(b)(1). States and industry from twelve states filed separate challenges to EPA's disapproval of their respective state's ozone plan for implementing the Clean Air Act's "Good Neighbor Provision." 42 U.S.C. § 7410(a)(2)(D)(i)(I). The Fourth, Fifth, Sixth, and Eighth Circuits held that venue for those challenges is appropriate in the regional federal courts of appeal. But, below, the Tenth Circuit explicitly departed from its sister circuits and held that exclusive venue for this type of challenge lies in the D.C. Circuit. Pet. App. 8a-19a. This Court's review is needed to resolve the split.

The conflict centers on how to characterize the agency action being challenged. The Clean Air Act provides that challenges to "nationally applicable regulations" may "be filed only" in the D.C. Circuit. 42 U.S.C. § 7607(b)(1). But challenges to "locally or regionally applicable" actions "may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.* Under the statute, "EPA's 'action in approving or promulgating any implementation plan' is the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (Kavanaugh, J.) (quoting 42 U.S.C. § 7607(b)(1)).

The Tenth Circuit held that challenges to EPA's disapprovals of Oklahoma's and Utah's Good Neighbor plans

1

are challenges to a "nationally applicable action" because EPA combined those disapprovals with the disapprovals of 19 other states into a single *Federal Register* notice. Pet. App. 13a. The Fourth, Fifth, Sixth, and Eighth Circuits reached the opposite conclusion in addressing other states' plans—from Arkansas, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Texas, and West Virginia—that were disapproved by EPA in the same 21-state *Federal Register* notice. As the Fourth Circuit explained, the Clean Air Act does not elevate form over substance: "the fact that the EPA consolidated its disapprovals in a single final rule does not, by that fact alone, make its 21 separate decisions … a single nationally applicable action." *West Virginia v. EPA*, 90 F.4th 323, 330 (4th Cir. 2024).

The confusion over the proper venue for challenges brought under the Clean Air Act imposes significant burdens on courts and litigants. This Court has repeatedly recognized the importance of clear jurisdictional and venue rules. *E.g., Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n.13 (1980). Confusion over where to file produces unnecessary "appeals and reversals" and "encourage[s] gamesmanship." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

This case demonstrates those concerns. Petitioners are being forced to litigate in the D.C. Circuit, while challengers from ten other states continue to litigate in the regional circuits. If this Court waits until final judgment to resolve this question, party and judicial resources will necessarily be wasted: either Petitioners will be required to re-litigate (and courts will have to re-adjudicate) in the Tenth Circuit, or parties in ten other states will be

compelled to do the same in the D.C. Circuit. Review now, before judgment, is therefore justified, as this Court has previously recognized. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 119 (2018) (granting certiorari before judgment to resolve dispute about which court should review challenges under the Clean Water Act).

Moreover, absent this Court's guidance, venue disputes under the Clean Air Act will continue to recur frequently. States must submit new implementation plans every time EPA establishes new national standards for any given air pollutant—standards EPA reviews every five years. 42 U.S.C. § 7409(d)(1), 7410(a)(1). Challenges of the kind brought here are therefore common. Meanwhile, venue questions arise in other Clean Air Act contexts, too, which has led to other circuit splits. And given the immense role of this cooperative federalism statute, these Clean Air Act cases often involve issues of tremendous importance to states, the economy, critical national industries, and the public. Repeated and protracted disputes about venue only delay their resolution.

This Court should grant review to end the division among courts of appeals and the uncertainty over how to interpret the Clean Air Act's venue provision.

## OPINION BELOW

The decision of the court of appeals (Pet. App.1a-19a) is was selected for publication and is available at *Oklahoma v. EPA*, 93 F.4th 1262 (10th Cir. 2024).

## JURISDICTION

This petition is filed under Rule 11 of this Court. The order transferring venue sought to be reviewed was

entered by the Tenth Circuit on February 27, 2024. This Court has jurisdiction to review on a writ of certiorari the order below under 28 U.S.C. §§ 1254(1) and 2101(e).

STATUTORY PROVISIONS INVOLVED

The text of 42 U.S.C. §§ 7410 and 7607(b)(1) is reproduced in the appendix to this petition.

STATEMENT OF THE CASE

### A. Statutory Background

**1.** The Clean Air Act centers around the "'core principle' of cooperative federalism." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 511 n.14 (2014). It does so by delegating some regulatory responsibilities to EPA and others to individual states.

The Act delegates to EPA authority to establish standards that apply nationwide, such as the National Ambient Air Quality Standards ("NAAQS"). 42 U.S.C. § 7409(a)-(b). Meanwhile, the Act gives each state the authority to "implement[], maint[ain], and enforce[]" these standards through state implementation plans based on state-specific considerations. *Id.* § 7410(a); *see also Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975) ("[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation."). States thereby assume "primary responsibility for assuring air quality within … such State by submitting an implementation plan for such State

4

which will specify the manner in which [the NAAQS] will be achieved and maintained." 42 U.S.C. § 7407(a).

The state implementation plan process involves a back-and-forth between EPA and the individual State. "Each State shall … adopt and submit" to EPA a state implementation plan for "such State." *Id.* § 7410(a)(1). EPA then "shall approve" the plan "if it meets all of the applicable requirements of" the Act. *Id.* § 7410(k)(3). "The mandatory 'shall' makes it quite clear that the Administrator is not to be concerned with factors other than those specified." *Union Elec. Co. v. EPA*, 427 U.S. 246, 257 (1976). This means that EPA has "no authority to question the wisdom of a State's choices" in developing a state plan. *Train*, 421 U.S. at 79; *see also Union Elec. Co.*, 427 U.S. at 269 (Congress delegated to states, not EPA, the power to make "legislative choices in regulating air pollution."). But if EPA validly "finds that a State has failed to … satisfy the minimum criteria" of the Act, it may promulgate a federal implementation plan for that state. 42 U.S.C. § 7410(c)(1).

**2.** The Clean Air Act provides for judicial review of EPA's actions under the Act, vesting original jurisdiction in the court of appeals. *See id.* § 7607(b)(1). It then divides venue, depending on the EPA action challenged, between the regional courts of appeals and the U.S. Court of Appeals for the District of Columbia Circuit. *Id.*

The Act provides for review in the regional circuits of actions under "several specifically enumerated provisions of the Act," *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 584 (1980), including any EPA action "in approving or promulgating any implementation plan under section

5

7410 of this title," 42 U.S.C. § 7607(b)(1). In 1977, Congress added to that list a catch-all: also reviewable in the regional federal appellate courts are "any other final action of the Administrator under [the] Act which is locally or regionally applicable." *Harrison*, 446 U.S. at 584-85 (quoting 42 U.S.C. § 7607(b)(1)).

Meanwhile, the Act states that challenges to certain other EPA actions "may be filed only in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 7407(b)(1). This list includes EPA actions such as "promulgating any national primary or secondary ambient air quality standard," "any emission standard," "any standard of performance," or "any other nationally applicable regulations." *Id.* Finally, even for actions that must otherwise be filed in a regional circuit, challenges to those actions "may be filed only in the [D.C. Circuit] if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.*

### B. Procedural History

**1.** In 2015, EPA revised the NAAQS for ozone, lowering the national air quality standard from 75 to 70 parts per billion. 80 Fed. Reg. 65,292, 65,293-94 (Oct. 26, 2015). This triggered the responsibility for each state to develop an implementation plan for the revised NAAQS. *See* 42 U.S.C. § 7410(a)(1). One aspect of a state plan is demonstrating compliance with the Act's "Good Neighbor Provision," which delegates to each state the task of ensuring no "emissions activity within the State" will emit "in

6

amounts which will … contribute significantly to nonattainment," or "interfere with maintenance," of the NAAQS by "any other State." *Id.* § 7410(a)(2)(D)(i)(I). States accordingly developed and submitted to EPA their respective implementation plans to demonstrate compliance with the revised ozone NAAQS, including the Good Neighbor Provision. In developing these plans, states worked in close coordination with EPA's Regional Offices. *See, e.g.*, No. 23-9514, J.A.424-26 (correspondence between EPA's Region 6 Office and Oklahoma regarding Oklahoma's draft Good Neighbor plan); No. 23-9509, J.A.0069-73 (correspondence between EPA's Region 8 Office and Utah regarding Utah's plan).[1]

Throughout 2022, EPA proposed to disapprove the state Good Neighbor plans for 23 states. EPA published the proposed disapprovals in separate *Federal Register* notices, each covering a state or group of states within a single EPA Region. *See, e.g.*, 87 Fed. Reg. 9,798 (Feb. 22, 2022) (proposed state plan disapproval for Arkansas, Louisiana, Oklahoma, Texas); 87 Fed. Reg. 31,470 (May 24, 2022) (proposed state plan disapproval for Utah). In the proposed rulemakings, EPA purported to detail why each state's plan should be disapproved, individually examining each state's specific submission, emissions sources and trends, and downwind air quality contributions. *See*

---

[1] These citations are to the joint appendices filed in the court of appeals. The joint appendix (Dkt. No. 11041131) on the Oklahoma docket (No. 23-9514) was filed on November 1, 2023. The joint appendix (Dkt. No. 11037455) on the Utah docket (No. 23-9509) was filed on October 17, 2023.

*generally id.* In response, each state, and often regulated industries within each state, submitted comments to the proposed disapprovals demonstrating why the state's particular circumstances showed the state's plan was factually, analytically, and legally justified. *See, e.g.*, No. 23-9514, J.A.389-404 (Oklahoma comment letter on EPA's proposed Oklahoma state plan disapproval); No. 23-9509, J.A.0145-48 (Utah comment letter on EPA's proposed Utah state plan disapproval); and J.A.0149-357 (Utah industry comment letters).

EPA nonetheless finalized the disapproval of 21 state Good Neighbor plans, but it did so in a single *Federal Register* notice. 88 Fed. Reg. 9,336 (Feb. 13, 2023). EPA's state-by-state justification for disapproving each of these plans relied almost entirely on its assessment of the individual state plans in its proposed disapprovals. *See, e.g.*, *id.* at 9,354-61.[2]

**2.** A mix of states and industry parties in 12 states challenged their respective state-plan disapprovals in their regional circuits.[3] In each of those regional courts of

---

[2] EPA has recently proposed to disapprove the state plans of five additional states. 89 Fed. Reg. 12,666 (Feb. 16, 2024) (proposed disapproval of state plans of Arizona, Iowa, Kansas, New Mexico, and Tennessee).

[3] *See West Virginia v. EPA*, No. 23-1418 (4th Cir.); *Texas v. EPA*, No. 23-60069 (5th Cir.) (Texas, Louisiana, and Mississippi); *Kentucky v. EPA*, No. 23-3216 (6th Cir.); *Arkansas v. EPA*, No. 23-1320 (8th Cir.); *Missouri v. EPA*, No. 23-1719 (8th Cir.); *Allete, Inc. v. EPA*, No. 23-1776 (8th Cir.) (Minnesota); *Nevada Cement Co. v. EPA*, No. 23-682 (9th Cir.) (Nevada); *Oklahoma v. EPA*, No. 23-

8

appeals, EPA filed motions to dismiss or transfer venue, arguing that its state plan disapprovals were either "nationally applicable regulations" or "based on a determination of nationwide scope or effect," such that review is only appropriate in the D.C. Circuit under the Act's judicial review provision (42 U.S.C. § 7607(b)(1)). *E.g.* Mot. to Transfer, No. 23-9514, Dkt. No. 10983947 (10th Cir. Mar. 16, 2023); Mot. to Transfer, No. 23-9509, Dkt. No. 10983793 (10th Cir. Mar. 16, 2023). Until the decision below was issued, each of the regional circuits declined to grant EPA's motion to transfer venue.

The Fourth Circuit, in a published decision, denied EPA's motion to transfer, holding that review of West Virginia's challenge to its state plan disapproval was appropriate in that regional court of appeals instead of the D.C. Circuit. *West Virginia*, 90 F.4th 323. In an opinion by Judge Niemeyer, the court ruled that EPA's disapproval of West Virginia's plan was not "nationally applicable," noting that the "focus [is] on the geographical reach of the EPA's action"—which, in that case, was EPA's disapproval of a plan for West Virginia. *Id.* at 328. It rejected EPA's argument that "because [EPA] disapproved of the [state plans] of 21 States in a consolidated, single agency action, its determination that the West Virginia [plan] was inadequate somehow became national," reasoning that EPA's consolidated notice merely "throws a blanket labeled 'national' over 21 individual decisions rejecting 21

---

9514 (10th Cir.); *Utah v. EPA*, No. 23-9509 (10th Cir.); *Alabama v. EPA*, No. 23-11173 (11th Cir.).

separate States' [plans] in an effort to convert each unique state decision into a national one." *Id.* at 330.

"The Clean Air Act," the Fourth Circuit explained, "instructs that '[e]ach State' shall submit a [state plan] implementing the air quality standards" and "following each State's submission, the EPA approves or disapproves of each State's 'plan'—using the word 'plan' in the singular to indicate that the agency acts on each plan." *Id.* (quoting 42 U.S.C. § 7410(a)(1), (k)(1)-(3)). "Thus, the relevant agency action for our review here is the EPA's disapproval of West Virginia's [state plan]." *Id.* EPA's action on West Virginia's plan was also not "based on a determination of nationwide scope or effect" because in "rejecting West Virginia's [plan], it is clear that the EPA focused on factual data localized to West Virginia and two downwind States 'linked' to West Virginia" and "rejected West Virginia's analysis of those factual circumstances." *Id.* at 328. That EPA applied a "nationally consistent approach" to all state plans does not transform its action into a national regulation, otherwise "there never could be a local or regional action … because every action of the EPA purportedly applies a national standard created by the national statute and its national regulations." *Id.* at 329-30. Judge Quattlebaum joined Judge Niemeyer's opinion, but Judge Thacker dissented, stating that, in her view, "the Final Rule is clearly nationally applicable." *Id.* at 332.

The Fifth Circuit, like the Fourth, held that it was the proper venue for the challenges filed by Texas, Louisiana, and Mississippi to their respective plan disapprovals. *Texas v. EPA*, No. 23-60069, 2023 WL 7204840, at *3-6 (5th Cir. May 1, 2023). Here again, the court of appeals

10

focused on the text of the Clean Air Act: the Act "makes clear that the EPA's relevant actions for purposes of the present litigation are its various [state plan] denials." *Id.* at *4. So while "the EPA packaged these disapprovals together with the disapprovals of eighteen other States … , the EPA's chosen method of publishing an action isn't controlling." *Id.* "What controls is the [Act]" and the Act "is very clear: The relevant unit of administrative action here is the EPA's individual SIP denials" and, in fact, "the EPA separately considered and disapproved Texas's [plan], Louisiana's [plan], and Mississippi's [plan]." *Id.*

Having determined the relevant EPA action at issue, the Fifth Circuit had no trouble concluding venue was appropriate in that regional circuit, not the D.C. Circuit. "[T]he 'legal impact' of the three [state plan] disapprovals is plainly local or regional" given that they "involve only the regulation of Texas, Louisiana, and Mississippi emission sources and have legal consequences only for Texas, Louisiana, and Mississippi facilities." *Id.* at *5. They are therefore not nationally applicable actions where review is only appropriate in the D.C. Circuit. *Id.* Nor are the actions challenged in that case, the Fifth Circuit held, "based on a determination of nationwide scope or effect" because EPA's decisions "were plainly based on a number of intensely factual determinations unique to each State." *Id.* (citation and internal marks omitted). Judge Douglas dissented from the per curiam opinion because she believed EPA's action was "nationally applicable on its face" and "was based on a determination of 'nationwide scope or effect.'" *Id.* at *11.

11

The Sixth Circuit ruled in accord with the Fourth and Fifth, holding that transfer of Kentucky's challenge to its state plan disapproval to the D.C. Circuit was not warranted. *Kentucky v. EPA*, No. 23-3216, slip op. at 2-6 (6th Cir. July 25, 2023). Relying on the Fifth Circuit's analysis of the text of the Act, the Sixth Circuit started by concluding that the relevant "final action" is "EPA's denial of *Kentucky's*" plan. *Id.* at 4. The Sixth Circuit next explained that "State Implementation Plans, by their very nature, concern each State's plan" and "[b]ecause the denial and legal impact of Kentucky's [plan] affects only Kentucky—that is, it does not concern the nation, let alone any other state—the final action is 'locally or regionally applicable.'" *Id.* at 5. And the court rejected EPA's claim that its determination was one based on nationwide scope or effect because "EPA's disapproval here was based on a number of intensely factual determinations unique to Kentucky." *Id.* at 5-6 (citation and internal marks omitted). Judge Cole dissented from the decision of Judges McKeague and Nalbandian because he believed EPA's act was "based on a determination of nationwide scope or effect," without opining on whether it was also "nationally applicable." *Id.* at 10-21.

The Eighth Circuit, in separate orders unaccompanied by an opinion and without dissent, also denied EPA's motion to transfer challenges to Arkansas's, Missouri's, and Minnesota's state plan disapprovals. Order, *Arkansas v. EPA*, No. 23-1320, Dkt. No. 5269098 (8th Cir. April 25, 2023); Order, *Missouri v. EPA*, No. 23-1719, Dkt. No. 5281126 (8th Cir. May 26, 2023); Order, *Allete, Inc. v. EPA*, No. 23-1776, Dkt. No. 5281229 (8th Cir. May 26,

2023). Meanwhile, motions panels in the Ninth, Tenth, and Eleventh Circuits deferred decision on EPA's motions to transfer to a later merits panel in challenges to the state plan disapprovals of Nevada, Oklahoma, Utah, and Alabama. Order, *Nevada Cement Co. v. EPA*, No. 23-682, Dkt. No. 27 (9th Cir. July 3, 2023); Order, *Utah v. EPA*, No. 23-9509, Dkt. No. 10994985 (10th Cir. April 27, 2023); Order, *Alabama v. EPA*, No. 23-11173, Dkt. No. 24 (11th Cir. July 12, 2023).

### C. Decision Below

Splitting with its sister circuits, the Tenth Circuit merits panel published an opinion ruling that EPA's disapprovals of the Utah and Oklahoma state plans were "nationally applicable" and ordered the cases transferred to the D.C. Circuit. Pet. App. 12a-19a. The court below justified this conclusion by stating "Petitioners seek review of a final rule disapproving [state plans] from 21 states across the country—spanning eight EPA regions and ten federal judicial circuits—because those states all failed to comply with the good-neighbor provision." Pet. App. 12a. "And," the Tenth Circuit continued, "in promulgating that rule, the EPA applied a uniform statutory interpretation and common analytical methods, which required the agency to examine the overlapping and interwoven linkages between upwind and downwind states in a consistent manner." Pet. App. 12a-13a.

In so ruling, the Tenth Circuit "recognize[d] that the Fourth, Fifth, and Sixth Circuits recently reached the contrary conclusion: each denied the EPA's motions to transfer petitions challenging the same final rule at issue

13

here"— also acknowledging in a footnote that the Eighth Circuit also reached the contrary conclusion. Pet. App. 17a. The court below believed that "all three courts strayed" from the statute's text and, "because the Fourth, Fifth, and Sixth Circuit decisions denying the EPA's transfer motions all depart from [the Act's] plain text and our binding precedent, we decline to follow them." Pet. App. 19a.

## REASONS FOR GRANTING THE PETITION

This Court should grant review of the decision below because it directly conflicts with the rulings of the Fourth, Fifth, Sixth, and Eighth Circuits on an important and recurring federal question about the appropriate venue for challenges to EPA actions under the Clean Air Act. The disagreement among the courts of appeals presented by this case is exceptionally clear; it was explicitly acknowledged by the court below. Moreover, the issue of venue for Clean Air Act challenges is of immense importance to states, the federal government, industry, and the public, and will continue to arise frequently in cases that extend well beyond the Good Neighbor Provision. The Court should decide this question now, before seven courts of appeals are required to reach merits decisions in this and related cases concerning the plans of a dozen (or more) states without knowing the Court's judgment on the appropriate venue for these cases.

14

## I. The Tenth Circuit's decision below explicitly conflicts with the decisions of several other courts of appeal.

Certiorari is warranted because, in the ruling below, the Tenth Circuit entered a decision in conflict with four other federal courts of appeals on an important issue. The Tenth Circuit's ruling squarely splits with both the result and reasoning of decisions by the Fourth, Fifth, Sixth, and Eighth Circuits.

Start with the result of the Tenth Circuit's decision. The court below ruled that EPA's disapprovals of Oklahoma's and Utah's plans, which were published in the same *Federal Register* notice as 19 other states' disapprovals, could be reviewed only in the D.C. Circuit. Pet. App. 19a. Meanwhile, the Fourth, Fifth, Sixth, and Eighth Circuits—which are reviewing the disapprovals of other states' plans contained in the same *Federal Register* notice—have denied EPA's motion to transfer those cases to the D.C. Circuit. Neither the court below nor EPA have suggested that, for purposes of venue, anything distinguishes the disapprovals of Oklahoma's and Utah's plans from the disapprovals of the other states' ozone Good Neighbor plans being reviewed in the regional circuits. The conflict among courts of appeals is as clean as can be.

The reasoning of the court below also openly splits with reasoning embraced by the other circuits. The courts of appeals are divided in their rationales in at least two respects.

*First*, the Tenth Circuit believed "the nature of the agency's final action" being challenged was "a final rule

15

disapproving [state plans] from 21 states across the country—spanning eight EPA regions and ten federal judicial circuits." Pet. App. 12a-13a. In contrast, the Fourth Circuit held "the relevant agency action for our review here is the EPA's disapproval of West Virginia's [implementation plan]." *West Virginia*, 90 F.4th at 330. The Fourth Circuit rejected EPA's attempt, adopted by the Tenth Circuit, to "throw[] a blanket labeled 'national' over 21 individual decisions rejecting 21 separate States' [plans] in an effort to convert each unique state decision into a national one." *Id.* So, "the fact that the EPA consolidated its disapprovals in a single final rule does not, by that fact alone, make its 21 separate decisions included within its final rule … a single nationally applicable action." *Id.*

The Fifth Circuit similarly considered the issue of what "the relevant 'action' is for purposes of § 7607(b)(1)" and ruled "the [Clean Air Act] makes clear that the EPA's relevant actions for purposes of the present litigation are its various [state plan] denials." *Texas*, 2023 WL 7204840, at *3. The Fifth Circuit acknowledged that, "[y]es, the EPA packaged these disapprovals together with the disapprovals of eighteen other States," but the court held that "the EPA's chosen method of publishing an action isn't controlling." *Id.* at *4. "What controls is the [Act]" and "the [Act] is very clear: The relevant unit of administrative action here is the EPA's individual [state plan] denials." *Id.* The Sixth Circuit adopted the reasoning of the Fifth Circuit in reaching the same conclusion. *Kentucky*, *supra*, slip op. at 3-4.

This dispute arises because the Tenth Circuit interprets the text of the Clean Air Act differently than the

16

other courts of appeals. The Tenth Circuit believed that the *Federal Register* notice containing the disapprovals of 21 state plans was the relevant unit of analysis because the Act's judicial review provision speaks of a "final action." Pet. App. 13a (quoting 42 U.S.C. § 7607(b)(1)). The court then chided the Fourth, Fifth, and Sixth's Circuits from having "strayed" and "depart[ed] from § 7607(b)(1)'s plain text." Pet. App. 17a, 19a.

But for those other courts, the Tenth Circuit's invocation of the words "final action" merely begs the question; "[t]he relevant unit of administrative action" still must be determined. *Texas*, 2023 WL 7204840, at *4. That determination is governed by statute, namely, the provisions providing "the legal source of the agency's (here the EPA's) authority to take the challenged actions (here the [state plan] denials)." *Id.*; *contra* Pet. App. 16a n.6 ("Whether an EPA action is nationally applicable does not turn on the 'type' of statutory authority delegated to the agency."). With respect to state implementation plans, the Fifth Circuit wrote, the statute speaks in terms of state and EPA action for "each State" and "the State." *Texas*, 2023 WL 7204840, at *4 (quoting 42 U.S.C. § 7410(a), (k)(3)). And because EPA's action on a single state's plan is indisputably local or regional, not national, venue is appropriate in the regional circuit. *Id.* The Fourth and Sixth Circuits concurred in a similar textual analysis as the Fifth. *West Virginia*, 90 F.4th at 330 ("[T]he relevant agency action for our review here is the EPA's disapproval of West Virginia's [state plan]."); *Kentucky*, *supra*, slip op. at 3-4 (explaining that the important question is "determining *what* 'final action' we are dealing with" and

17

concluding that the answer is "EPA's disapproval of each state's [implementation plan]").

*Second*, the Tenth Circuit held that EPA's disapprovals were "nationally applicable" because "EPA applied a uniform statutory interpretation and common analytical methods, which required the agency to examine the overlapping and interwoven linkages between upwind and downwind states in a consistent manner." Pet. App. 12a-13a. The Fourth Circuit rejected precisely that reasoning: "While national standards — imposed by the statute, regulations, and practices — were indeed applied to reject West Virginia's [state plan], the venue provision of the Clean Air Act does not focus on whether national standards were applied." *West Virginia*, 90 F.4th at 329. "If application of a national standard to disapprove a plan were the controlling factor," the Fourth Circuit explained, "there never could be a local or regional action as recognized by the Clean Air Act because every action of the EPA purportedly applies a national standard created by the national statute and its national regulations." *Id.* at 329-30; *see also id.* at 328 (explaining that "the venue issue [does not] turn[] on whether a national rule or standard was applied to make the determination" because that would mean "there could be no local or regional action"). Instead, the Fourth Circuit pointed to EPA's state-specific disapproval, where "EPA focused on factual data localized to West Virginia" and EPA's rejection of "West Virginia's analysis of those factual circumstances." *Id.* at 328. The Fifth and Sixth Circuits are in accord with the Fourth's approach here, too. *Texas*, 2023 WL 7204840, at *5 & n.5; *Kentucky*, *supra*, slip op. at 5-6.

18

In short, the Tenth Circuit has squarely split with the Fourth, Fifth, Sixth, and Eighth Circuits on both *what* the appropriate venue is for these state plan disapproval challenges and *how* that analysis should be conducted. The decision below openly acknowledges the conflict, "recogniz[ing] that the Fourth, Fifth, and Sixth Circuits recently reached the contrary conclusion." This irreconcilable conflict among the courts of appeals requires this Court's resolution.[4]

## II. The question of the appropriate venue for challenges under the Clean Air Act is ripe for review, important, and frequently recurring.

**A.** Certiorari before judgment is warranted to resolve the split on venue "because of the importance of determining the locus of judicial review of the actions of EPA [under the Clean Air Act]." *Harrison*, 446 U.S. at 586 (granting certiorari review before final judgment); *see also* Sup. Ct. R. 11. Waiting until the D.C. Circuit decides the merits of this case will not impact the venue question, while delay will only result in needless expenditure of state, federal, industry, and court resources to litigate one or more cases in the incorrect venue.

This Court has previously granted certiorari before judgment when "[u]ncertainty surrounding the scope of

---

[4] While the Tenth Circuit mentioned the Eighth Circuit's decision only in passing, Pet. App. 17a n.7, the Eighth Circuit, by denying EPA's motion to change venue, also necessarily disagreed with the Tenth Circuit's decision that venue is appropriate only in the D.C. Circuit because the challenged agency action is "nationally applicable."

19

[an] Act's judicial-review provision" has divided courts and led to duplicative litigation. *Nat'l Ass'n of Mfrs.*, 583 U.S. at 119. In that case, the Sixth Circuit held it had jurisdiction to review suits brought under the Clean Water Act, but a single district court with a suit before it challenging the same rulemaking disagreed. *Id.* This Court resolved the confusion without waiting for the parallel litigation that had been proceeding across the country to reach final judgments.

Here, the split is not only more pronounced, but the need for immediate review is even greater given the posture of this case and the numerous courts of appeals with state Good Neighbor plan challenges before them. Petitioners here have already fully briefed the merits of their claims before the Tenth Circuit. If this Court declines review, the parties may engage in further briefing in the D.C. Circuit, expending the public funds of both state and federal governments. Oral argument and the decisionmaking process will also consume valuable litigant and court resources. If this Court were to ultimately determine that the Tenth Circuit should have retained venue, the delay and duplicated effort from merits adjudication in the D.C. Circuit would be unnecessary.

And, of course, if this Court determines that exclusive venue lies in the D.C. Circuit, then the ten challenges currently being litigated in the Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits would likewise be for naught. Review now would serve public policy and conserve judicial and party resources, instead of subjecting the states and EPA "to long and complex litigation which may all be for naught if consideration of the preliminary

20

question of venue is postponed until the conclusion of the proceedings." *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558 (1963).

Nor would further delay "help[] to explain and formulate the underlying principles this Court … must consider." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2597 (2015). "[Venue] is a separate and independent matter, anterior to the merits and not enmeshed in the factual and legal issues comprising the [states' petitions for review]." *Mercantile Nat'l Bank*, 371 U.S. at 558. It is unlikely that the D.C. Circuit would reconsider the venue question after transfer. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) ("[T]he policies supporting the [law of the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."). And five circuits have already considered the question presented. This petition therefore presents a clean, well-developed, and fulsome split, ready for review.

In short, additional delay would produce no benefits, but it would result in unnecessary delays and tremendous wasted effort. This Court should grant review now rather than subject litigants, courts, and the public to those costs.

**B.** The Court should also grant review because venue questions arise frequently in the context of important Clean Air Act disputes. Such disputes include the current voluminous litigation over state Good Neighbor plans, other disputes about state plan approvals and

21

disapprovals, and still other disputes under the Clean Air Act.

*First*, a determination from this Court on the appropriate venue will provide definitive resolution to venue questions being litigated in multiple circuits. Answering the question presented will not merely resolve the dispute over the proper venue for separate challenges brought by Oklahoma and Utah to EPA's plan disapproval for each state, it will also resolve disputed questions of venue still ongoing in the related Ninth and Eleventh Circuit cases. *Nevada Cement Co. v. EPA*, No. 23-682, Dkt. No. 27 (9th Cir. July 3, 2023) (referring venue dispute to merits panel); Order, *Alabama v. EPA*, No. 23-11173, Dkt. No. 24 (11th Cir. July 12, 2023) (same). And it will confirm (or reject) the decisions to retain venue in the Fourth, Fifth, Sixth, and Eighth Circuits.

Absent this Court's intervention, an irreconcilable legal incongruity will persist: Oklahoma and Utah will be forced to litigate issues relating to their state-specific emissions and ozone contributions in the D.C. Circuit, while other states are litigating their local ozone issues in their regional circuits. Given the massive effect of EPA cross-state ozone regulation on local economies, these disputes are too important to be litigated amidst such a legal haze. *See Texas*, 2023 WL 7204840, at *10 (explaining the "billions of dollars in compliance costs" and harms to electric grid reliability imposed by EPA's proposed ozone Good Neighbor rulemakings); *West Virginia*, 90 F.4th at 331 (explaining burden on state regulators and consumers of EPA's Good Neighbor rulemakings).

22

Granting certiorari would also resolve ongoing disputes about the venue provision's savings clause, which directs to the D.C. Circuit review of EPA actions, including those locally and regionally applicable, that are "based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). The Tenth Circuit did not "address EPA's alternative argument that the petitions belong in the D.C. Circuit even if the final action is 'locally or regionally applicable' because it 'is based on a determination of nationwide scope or effect' made and published by the EPA." Pet. App. 19a n.8 (quoting § 7607(b)(1)). But the Fourth, Fifth, and Sixth Circuits all directly rejected that argument. *See Texas*, 2023 WL 7204840, at *5 (holding that because the state plan disapprovals were based on "intensely factual determinations," they were not based on a determination of nationwide scope or effect); *accord West Virginia*, 90 F.4th at 330; *Kentucky*, No. 23-3216, slip op. at 5-6. Meanwhile, dissenting judges in the Fifth and Sixth Circuits disagreed and would have transferred the cases to the D.C. Circuit, arguing that EPA's actions were based on a determination of nationwide scope and effect. *Texas*, 2023 WL 7204840, at *12-13 (Douglas, J., dissenting); *Kentucky*, No. 23-3216, slip op. at 12-19 (Cole, J., dissenting). Review of the question presented will address this ongoing division, too.

*Second*, a decision from this Court will provide clarity in innumerable future challenges to state plan approvals or disapprovals under the Clean Air Act, which occur whenever EPA revises ambient air quality standards and issues other regulations requiring state plan

23

revisions. The Clean Air Act requires EPA to promulgate new national ambient air quality standards every five years for a host of different pollutants. 42 U.S.C. § 7409(d)(1). Then, every time a new national standard for any given pollutant rolls out, States have no more than three years to revise their state implementation plans. 42 U.S.C. §§ 7410(a)(1), (a)(2)(D). And each state has plans for different provisions of the Clean Air Act—the Good Neighbor Provision is just one of them—each of which may generate their own litigation and concomitant venue disputes. *E.g.*, *Texas v. EPA*, 829 F.3d 405, 417-24 (5th Cir. 2016) (retaining venue in regional circuit in challenge to disapprovals of states' plans to meet Act's "regional haze" requirements); *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455-56 (adjudicating venue in challenge to approval of state plan for nonroad engines and vehicles); *New York v. EPA*, 133 F.3d 987, 989-90 (7th Cir. 1998) (retaining venue in regional circuit over dispute concerning exemption from cross-state ozone standards spanning states in three different circuits). Litigation over approvals and disapprovals of portions of state plans is therefore almost constant. And they further multiply every time EPA jumpstarts the process, even absent setting a new national standard, by issuing calls for state plan revisions. *See* 42 U.S.C. § 7410(k)(5); *e.g., W. Virginia Chamber of Com. v. Browner*, 166 F.3d 336 (4th Cir. 1998) (adjudicating venue dispute over call for cross-state ozone plan revisions).

Litigation over state plans addressing the Good Neighbor Provision is a prime example of how implementation plan disputes are only increasing in scope and

24

frequency. EPA's first Good Neighbor rule—the 1998 NOx SIP Call—was limited to Eastern states. 63 Fed. Reg. 57,356, 57,386 (Oct. 27, 1998); *see also* 80 Fed. Reg. 75,706, 75,715 (Dec. 3, 2015). EPA extended the program to additional states in the 2011 Transport Rule. *See EME Homer*, 572 U.S. at 499-500. Currently under the 2015 ozone NAAQS, the Good Neighbor Provision now has potential implications as far west as Utah, Nevada, and California. 88 Fed. Reg. at 9,355, 9,358, 9,360. As EPA's regulatory approach has become more aggressive, vigorous litigation of EPA's individual state plan actions has increased. Without clear rules from this Court, venue disputes in challenges to EPA actions related to the Good Neighbor Provision will continue to recur, creating ongoing uncertainty for litigants.

*Third*, a decision by this Court will help resolve recurring venue disputes under a variety of other Clean Air Act provisions. For example, in cases involving attainment designations under Section 107 of the Act, courts often disregard the substance of the EPA action at issue and simply rely on the number of states receiving designations, with those attainment designations involving more states being sent to the D.C. Circuit and those with fewer states remaining in the local circuits. *See, e.g.*, *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 668 (7th Cir. 2017) (24 states transferred to D.C.); *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 806-07 (9th Cir. 1980) (one state retained in the local circuit); *Texas v. EPA*, 983 F.3d 826, 832-35 (5th Cir. 2020) (same); *Texas v. EPA*, 706 F. App'x 159 (5th Cir. 2017) (same).

25

Courts have also addressed venue issues over such disparate topics as special provisions granting California a Clean Air Act preemption waiver that may be adopted by states nationwide, to permitting decisions under Title V of the Act that advanced a novel interpretation of the Act, to allocation of pollution entitlements in the Act's acid rain program. *See, e.g.*, *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 877-78 (D.C. Cir. 2015); *Sierra Club v. EPA*, 926 F.3d 844, 846 (D.C. Cir. 2019); *Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 381-82 (D.C. Cir. 2022); *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 865-67 (D.C. Cir. 1996). Similarly, in recent decisions related to refinery-specific waiver determinations under the Renewable Fuel Standards program, a split has developed as to whether such decisions should be heard in the local circuits or in the D.C. Circuit. *See Calumet Shreveport Ref., L.L.C. v. EPA,* 86 F.4th 1121, 1130-31 (5th Cir. 2023) (holding that the Fifth Circuit was the appropriate venue because each waiver decision was based on the unique facts and circumstances presented by each individual small refinery); *Hunt Ref. Co. v. EPA*, 90 F.4th 1107, 1110-12 (11th Cir. 2024) (holding the D.C. Circuit was the appropriate venue because EPA issued a single notice for all affected small refineries and applied a common decision-making method).

Finally, ensuring that the appropriate disputes remain in the regional circuits, consistent with the will of Congress expressed in the statutory text, is particularly important to the states. While the Act requires "[n]ationally applicable actions go to the D.C. Circuit" to "promote[] national uniformity," it also mandated "locally or

26

regionally applicable actions … go to the regional circuits, which promotes responsiveness and attention to local and regional diversity." *Texas*, 983 F.3d at 835. Oklahoma and Utah should, consistent with the Act, be afforded the opportunity to litigate the specific issues relating to their emissions, and the downwind effects on their bordering neighbors, in courts intimately familiar with their regional issues, economies, and geographies. The regional circuit, moreover, will likely be able to resolve issues regarding a few states more expeditiously than the D.C. Circuit would if all states were lumped into a consolidation of numerous cases before that distant forum. Such consolidation also often prejudices the ability of states to bring their unique issues to the fore. Those unfortunate results will only metastasize across many aspects of Clean Air Act litigation if EPA is able to repeat its procedural ploy, now endorsed by the Tenth Circuit, of packaging together many disparate local actions into a single *Federal Register* notice. Particularly given the frequency of Clean Air Act disputes in a variety of contexts, this Court's definitive interpretation of the Act's venue provision will advance important jurisprudential interests.

**C.** This Court's review is also warranted because the confusion over the proper application of 42 U.S.C. § 7607(b)(1) unnecessarily wastes judicial and party resources in the present cases and in future ones among the panoply of Clean Air Act disputes.

"[L]itigation over whether the case is in the right court is essentially a waste of time and resources." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n.13 (1980)

27

(internal quotation marks and citation omitted). Uncertainty on that question produces "appeals and reversals, encourage[s] gamesmanship, and, again, diminish[es] the likelihood that results and settlements will reflect a claim's legal and factual merits." *Hertz Corp.*, 559 U.S. at 94.

The persistent conflict over the circuit in which a Clean Air Act challenge belongs produces all those harms. Courts of appeals often defer disputed venue questions to the merits panel, as the Tenth Circuit did here and the Ninth and Eleventh Circuits did in challenges brought by other states over their Good Neighbor plans. *Supra* 12. Litigants therefore sometimes invest significant time and resources into briefing a case, only for the court to transfer the case to another circuit. Indeed, here, the transfer decision came after the parties completely briefed the merits and a month before oral argument. A decision by this Court will promote judicial efficiency and streamline litigation over EPA final actions.

The uncertainty surrounding § 7607(b)(1)'s proper application has also incentivized petitioners to file protective petitions for review in multiple circuits. *See Nat'l Ass'n of Mfrs.*, 583 U.S. at 119 ("Uncertainty surrounding the scope of the Act's judicial-review provision … prompted many parties … to file 'protective' petitions for review in various Courts of Appeals to preserve their challenges"). Petitioners challenging EPA actions related to state plans regularly file duplicative judicial review petitions in both the regional circuit and the D.C. Circuit to preserve appeal rights in case they chose venue incorrectly and their

28

"primary" petition gets dismissed rather than transferred.[5]

In some cases, "primary" petitions for review of the same EPA action are filed by different parties in multiple circuits. *See Texas*, 983 F.3d at 823 (Texas filed petition in Fifth Circuit while the Sierra Club filed a petition in the D.C. Circuit). These repetitive petitions require party resources to prepare and impose unnecessary administrative burdens on courts.

Indeed, in this case, EPA has made this duplication of efforts even worse. Oklahoma and Utah filed protective petitions in the D.C. Circuit after EPA moved to transfer or dismiss their Tenth Circuit petitions. EPA then attempted to exploit the uncertainty by asking the D.C. Circuit to adjudicate the venue issue already before the Tenth Circuit so as to preempt the regional circuit's adjudication. *Utah v. EPA*, Nos. 23-1102 *et al.*, EPA Mot. to Confirm Venue and to Expedite, Dkt. No. 1999261 (D.C. Cir. May 15, 2023). Thankfully, the D.C. Circuit rejected that gambit, but not after yet more expenditure of party and court resources briefing the issue. *Id.*, Petitioners' Reply in Support of Abeyance, Dkt. No. 2001718 (D.C.

---

[5] *See, e.g.*, *Sierra Club*, 926 F.3d at 846 (dismissing case for improper venue rather than transferring to already open Tenth Circuit docket); *see also id.* at 847 (protective petition filed in the Tenth Circuit); *Dalton Trucking, Inc.*, 808 F.3d at 877 (protective petition filed in D.C. Circuit); *Am. Rd. & Transp. Builders*, 705 F.3d at 455 (protective petition filed in the Ninth Circuit); *Texas*, 829 F.3d at 416 n.12 (protective petitions filed in both the Tenth and D.C. Circuits); *Texas*, 706 Fed. App'x at 159 (protective petition filed in D.C. Circuit).

29

Cir. June 1, 2023); *id.*, Order, Dkt. No. 2005201 (D.C. Cir. June 27, 2023).

"[A]dministrative simplicity is a major virtue" in applying a venue statute. *Hertz Corp.*, 559 U.S. at 94. This Court should grant review to provide it.

### III. The Tenth Circuit's decision is wrong.

Review should also be granted to correct the errant decision below. At bottom, the Tenth Circuit's decision grants EPA the power to "transform" the "proper forum for judicial review" by packaging multiple "regionally applicable" actions into a single *Federal Register* notice, and therefore making it a "nationally applicable action." Pet. App. 13a. That holding badly misinterprets the Clean Air Act, and it adopts a view of venue that improperly elevates the form of an EPA action over its substance.

**A.** To start, the Clean Air Act's venue provision "specifically enumerate[s]" a list of EPA actions that are per se reviewable in the appropriate regional circuit. *Harrison*, 446 U.S. at 584. In that list are challenges to EPA "action in approving or promulgating any implementation plan under section 7410," such as plans implementing the Good Neighbor Provision of the Clean Air Act. 42 U.S.C. § 7607(b)(1). Thus, "the statutory text places review of [state implementation plan] approvals or disapprovals in the regional circuits." *Texas v. EPA*, 829 F.3d 405, 419 n.16 (5th Cir. 2016). Not surprisingly, lower courts have repeatedly described action on whether to approve a state implementation plan as the "prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. &*

30

*Transp. Builders Ass'n*, 705 F.3d at 455; *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 993 (8th Cir. 2016) (same); *see also Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 386 (D.C. Cir. 2022) (describing state implementation plan rulemaking as at the far "end of the spectrum" of locally or regionally applicable actions); *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) (characterizing a state implementation plan as a "purely local action" and "an undisputably regional action").

The Tenth Circuit dismissed this text by emphasizing the catch-all at the end of the list of actions reviewable in the regional circuit: "[T]he statute merely provides," the Tenth Circuit said, "that '[a] petition for review of the [EPA]'s action in approving or promulgating any implementation plan … or any other final action … (including any denial or disapproval … ) *which is locally or regionally applicable* may be filed only in the … appropriate [regional] circuit.'" Pet. App. 11a n.5 (quoting 42 U.S.C. § 7607(b)(1)) (emphasis in original). According to the court below, this "does not … say that any such approval, promulgation, denial, or disapproval *is* locally or regionally applicable." *Id.* But the Tenth Circuit ignores "the grammatical 'rule of the last antecedent,' according to which a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Thus, the inclusion of state implementation plan approvals in the enumerated actions means they are categorically reviewable in the regional circuit regardless of whether they are locally or regionally applicable. At the

31

very least, this is a strong textual indication that the challenges here are presumptively appropriate in the regional circuit.

Indeed, EPA concedes that challenges to its state implementation plan *approvals* belong in the regional circuits. When EPA approved the interstate transport plans for the 2015 ozone standard for several other states, it did so in a series of *Federal Register* notices covering individual states or small groups of states and instructed that "petitions for judicial review … must be filed in the United States Court of Appeals for the appropriate circuit."[6]

EPA nonetheless argues, and the Tenth Circuit agreed, that exclusive venue for challenges to the state Good Neighbor plan *disapprovals* lies in the D.C. Circuit because of EPA's calculated decision to announce 21 state plan disapprovals in a single *Federal Register* notice, claiming the consolidated notice is therefore a "nationally applicable" action. The only distinction between EPA's approval of state plans and disapproval of state plans was the form of the notice—specifically, the number of states that EPA included in a single *Federal Register* notice—and to EPA, that makes all the difference.

But the statute does not hinge the entire question of venue on such manipulable formalities. A *Federal Register* notice does not, by itself, constitute a "final action." It

_____

[6] *See e.g.* 86 Fed. Reg. 73,129 (Dec. 27, 2021) (Hawaii); 85 Fed. Reg. 20,165 (Oct. 11, 2020) (Colorado and North Dakota); 86 Fed. Reg. 68,413 (Dec. 2, 2021) (Florida, Georgia, North Carolina, and South Carolina); *see also, e.g.*, *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1174 (9th Cir. 2015) (reviewing challenge to approval of California's implementation plan).

32

is no more than a vehicle to communicate agency action. *See Nat. Res. Def. Council v. EPA*, 706 F.3d 428, 432 (D.C. Cir. 2013). Rather, as the Fourth, Fifth, and Sixth Circuits explained, how EPA packaged its state plan decisions does not determine the relevant "action"—disapproval of a single state's plan or 21 states' plans—being challenged. *Supra* 15-16.  That determination instead stems from the source of EPA's authority to take the action, which here is EPA's authority to approve or disapprove the plan of a single state under 42 U.S.C. § 7410. *Supra* 16-17. Such single-state actions are categorically not "nationally applicable."

**B.** The Fourth, Fifth, and Sixth Circuits also demonstrated the Tenth Circuit's error in concluding that Oklahoma and Utah's plan disapprovals were nationally applicable because EPA applied the same analytic framework in evaluating all state plans. That cannot be correct, the Fourth Circuit explained, because it would make virtually *every* EPA action national since EPA is always purporting to apply some consistent standard to administer its portion of a national statute. *Supra* 17-18. After all, if EPA applied different standards to different states, that "[u]nexplained inconsistency'" would be "arbitrary and capricious." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation and internal quotation marks omitted). Indeed, here, EPA applied the same legal principles and methodology to *both* the state plan approvals *and* the disapprovals. It contended challenges to the former belong in the regional circuits. *Supra* 32 n.6. But that cannot be squared with its present argument that

33

application of a national framework for the latter mandates review only in the D.C. Circuit.

Other aspects of EPA's state plan disapprovals only corroborate that each disapproval is a separate final action for purposes of the Act's venue provision. In its *Federal Register* notice, EPA offered only "a brief, high level overview of the [state plan] submissions and the EPA's evaluation and key bases for disapproval," while stating that the "full basis for the EPA's disapprovals" was to be found in the sundry proposed rulemakings that were grouped and signed by EPA's *regional* offices. 88 Fed. Reg. at 9,354; *see supra* 6-8. Thus, even EPA believed at one point the true nature of its state plan disapprovals is local or regional.

And even in its final *Federal Register* notice, EPA codified Oklahoma's, Utah's, and every other state's plan disapproval in separate sections of the Code of Federal Regulations. 88 Fed. Reg. at 9,381-84. Normally, "[a]gency statements 'having general applicability and legal effect' are to be published in the Code of Federal Regulations," while "preamble statements" are not by default considered the final agency action that is subject to judicial review. *Nat. Res. Def. Council v. EPA*, 559 F.3d 561, 565 (D.C. Cir. 2009) (citing 44 U.S.C. § 1510(a)-(b); 1 C.F.R. § 8.1); *see also AT&T Corp. v. FCC*, 970 F.3d 344, 350 (D.C. Cir. 2020). Oklahoma challenges the regulation disapproving its state plan that EPA seeks to codify at 40 C.F.R. § 52.1922(c), while Utah challenges 40 C.F.R. § 52.2354, and neither are challenging regulations applying to any other state. Those state-specific regulations are, on their face, not "nationally applicable,"

34

confirming that the Tenth Circuit erred in concluding that venue lies exclusively in the D.C. Circuit.

* * *

The Tenth Circuit wrongly indulged EPA's decision to consciously elevate form over substance. Congress directed that state plan approvals and disapprovals—each of which reflect "intensely factual determinations" unique to each state—belong in regional circuits. *Texas*, 829 F.3d at 421. Allowing EPA to gerrymander venue by packaging together a multitude of state plan disapprovals would undermine Congress's careful allocation. Whatever EPA's reasons are to attempt so nakedly to manipulate the forum for these cases, "venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it." *Travis v. United States*, 364 U.S. 631, 634 (1961) (citation omitted).

CONCLUSION

This Court should grant the petition.

March 2024                    Respectfully submitted,

35

Sean D. Reyes
  *Attorney General*
Stanford E. Purser
  *Solicitor General*
OFFICE OF THE UTAH
ATTORNEY GENERAL
Utah State Capitol
Complex
350 N. State St., Ste. 230
Salt Lake City, UT 84114

William L. Wehrum
WEHRUM ENVIRONMEN-
TAL LAW LLC
1629 K St., N.W., Ste. 300
Washington, D.C. 20006

Emily C. Schilling
HOLLAND & HART LLP
222 S. Main St., Ste. 2200
Salt Lake City, UT 84101

Kristina R. Van Bockern
Aaron B. Tucker
HOLLAND & HART LLP
555 Seventeenth St.,
Ste. 3200
Denver, CO 80202

*Counsel for Petitioner*
*State of Utah*

Gentner Drummond
  *Attorney General*
Garry M. Gaskins, II
  *Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*
OKLAHOMA ATTORNEY
GENERAL'S OFFICE
313 N.E. 21st Street
Okla. City, OK 73105

Mithun Mansinghani
  *Counsel of Record*
LEHOTSKY KELLER COHN
  LLP
629 W. Main St.
Oklahoma City, OK 73102
(512) 693-8350
mithun@lkcfirm.com

Michael B. Schon
Drew F. Waldbeser
LEHOTSKY KELLER COHN
  LLP
200 Mass. Ave. N.W.
Washington, DC 20001

*Counsel for Petitioners*
*State of Oklahoma and*
*Oklahoma Department of*
*Environmental Quality*

36

# Exhibit B

No. _____

# In the Supreme Court of the United States

PACIFICORP; DESERET GENERATION & TRANSMISSION
CO-OPERATIVE; UTAH MUNICIPAL POWER AGENCY;
UTAH ASSOCIATED MUNICIPAL POWER SYSTEMS;
OKLAHOMA GAS & ELECTRIC COMPANY; TULSA
CEMENT LLC, *d/b/a* CENTRAL PLAINS CEMENT
COMPANY LLC; REPUBLIC PAPERBOARD COMPANY
LLC; *and* WESTERN FARMERS ELECTRIC
COOPERATIVE, PETITIONERS,
*v.*
U.S. ENVIRONMENTAL PROTECTION AGENCY *and*
MICHAEL REGAN, ADMINISTRATOR, U.S.
ENVIRONMENTAL PROTECTION AGENCY

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT*

## PETITION FOR A WRIT OF CERTIORARI

| | |
|---|---|
| MEGAN BERGE | MISHA TSEYTLIN |
| SARAH DOUGLAS | *Counsel of Record* |
| BAKER BOTTS L.L.P. | KEVIN M. LEROY |
| 700 K Street N.W. | TROUTMAN PEPPER |
| Washington, D.C. 20001 | HAMILTON SANDERS LLP |
| (415) 291-6233 | 227 W. Monroe Street |
| megan.berge@bakerbotts.com | Suite 3900 |
| *Attorneys for the* | Chicago, IL 60606 |
| *Oklahoma Industry* | (608) 999-1240 |
| *Petitioners* | misha.tseytlin@troutman.com |
| | *Attorneys for PacifiCorp* |

*(Additional counsel listed on inside cover.)*

J. MARK LITTLE
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
*Attorneys for the
Oklahoma Industry
Petitioners*

STEVEN J. CHRISTIANSEN
DAVID C. REYMANN
PARR BROWN GEE
& LOVELESS
101 South 200 East
Suite 700
Salt Lake City, UT 84111
(801) 532-7840
schristiansen@parrbrown.com
dreymann@parrbrown.com
*Attorneys for Deseret
Generation &
Transmission Co-
Operative*

EMILY A. O'BRIEN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606

MARIE BRADSHAW
DURRANT
*Assistant General
Counsel*
CHRISTIAN C. STEPHENS
*Senior Attorney*
PACIFICORP
1407 North Temple
Suite 320
Salt Lake City, UT 84116

CARROLL WADE
MCGUFFEY III
MELISSA HORNE
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree St. N.E.
Suite 3000
Atlanta, GA 30308
*Attorneys for PacifiCorp*

*(Additional counsel listed on following page.)*

ALAN I. ROBBINS
DEBRA D. ROBY
THOMAS B. STEIGER III
WASHINGTON ENERGY
LAW LLP
900 17th St. NW
Suite 500-A
Washington, D.C. 20006
(703) 785-9270
arobbins@washington
energylaw.com
droby@washington
energylaw.com
tsteiger@washington
energylaw.com
*Attorneys for Utah
Municipal Power Agency*

H. MICHAEL KELLER
ARTEMIS D. VAMIANAKIS
FABIAN VANCOTT
95 South State Street
Suite 2300
Salt Lake City, UT 84111
(801) 531-8900
mkeller@fabianvancott.com
avamianakis@fabian
vancott.com

EMILY L. WEGENER
*General Counsel*
UTAH ASSOCIATED
MUNICIPAL POWER
SYSTEMS
155 North 400 West
Suite 480
Salt Lake City, UT 84103
(801) 566-3938
emily@uamps.com
*Attorneys for Utah
Associated Municipal
Power Systems*

## QUESTION PRESENTED

Whether the Environmental Protection Agency's disapproval of a State Implementation Plan may only be challenged in the D.C. Circuit under 42 U.S.C. § 7607(b)(1) if EPA packages that disapproval with disapprovals of other States' SIPs and purports to use a consistent method in evaluating the state-specific determinations in those SIPs.

ii

## PARTIES TO THE PROCEEDINGS

The Utah Industry Petitioners are PacifiCorp, Deseret Generation & Transmission Co-Operative, Utah Municipal Power Agency, and Utah Associated Municipal Power Systems. PacifiCorp, Deseret Generation & Transmission Co-Operative, and Utah Municipal Power Agency were the Petitioners in the Tenth Circuit below in case number 23-9512 and are Petitioners here. Utah Associated Municipal Power Systems was the Petitioner in the Tenth Circuit below in case number 23-9520 and is a Petitioner here.

The Oklahoma Industry Petitioners are Oklahoma Gas & Electric Company; Tulsa Cement LLC, d/b/a Central Plains Cement Company LLC; Republic Paperboard Company LLC; and Western Farmers Electric Cooperative. Oklahoma Gas & Electric Company was the Petitioner in the Tenth Circuit below in case number 23-9521 and is a Petitioner here. Tulsa Cement LLC, d/b/a Central Plains Cement Company LLC, and Republic Paperboard Company LLC were the Petitioners in the Tenth Circuit below in case number 23-9533 and are Petitioners here. Western Farmers Electric Cooperative was the Petitioner in the Tenth Circuit below in case number 23-9534 and is a Petitioner here.

iii

The U.S. Environmental Protection Agency and Michael Regan, in his official capacity as the Administrator of the U.S. Environmental Protection Agency, are the Respondents here and were the Respondents in each of the Tenth Circuit cases below.

iv

## CORPORATE DISCLOSURE STATEMENTS

Petitioner PacifiCorp's common stock is 100% owned by PPW Holdings, LLC, a Delaware limited liability company, which is, in turn, wholly owned by Berkshire Hathaway Energy Company. Berkshire Hathaway Energy Company is a majority-owned subsidiary of Berkshire Hathaway Inc., a publicly held corporation. No publicly held company directly owns 10% or more of PacifiCorp's common stock.

Petitioner Deseret Generation & Transmission Co-Operative is a Utah non-profit corporation operating as a wholesale generation and transmission electric cooperative that is wholly owned by its member electric cooperatives, none of which are publicly traded. Deseret Generation & Transmission Co-Operative does not have a parent corporation and no publicly held company owns 10% or more of its stock.

Petitioner Utah Municipal Power Agency is a municipal power agency created pursuant to the Interlocal Cooperation Act. Utah Code Ann. §§ 11-13-101 *et seq*. Utah Municipal Power Agency is a not-for-profit body politic and corporate and political subdivision of the State of Utah, and it does not have a parent corporation or shareholders. As such, Utah Municipal Power Agency has no information to disclose pursuant to Rule 29.6.

v

Petitioner Utah Associated Municipal Power Systems is a political subdivision of the State of Utah. As such, Utah Associated Municipal Power Systems has no information to disclose pursuant to Rule 29.6.

Petitioner Oklahoma Gas & Electric Company is a corporation organized and existing under the laws of the state of Oklahoma, and has its principal office in Oklahoma City, Oklahoma. Oklahoma Gas & Electric Company is a wholly-owned subsidiary of OGE Energy Corp., a holding company that is exempt from registration under the Public Utility Holding Company Act of 2005. The common stock of OGE Energy Corp. is publicly traded and listed on the New York Stock Exchange. OGE Energy Corp. has no parent company, and no publicly held company has a 10% or greater ownership interest in OGE Energy Corp.

Petitioner Tulsa Cement LLC, doing business as Central Plains Cement Company LLC, is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal office in Tulsa, Oklahoma. Central Plains Cement Company LLC is a wholly-owned subsidiary of Eagle Materials Inc., a corporation organized and existing under the laws of the State of Delaware. The common stock of Eagle Materials Inc. is publicly traded and listed on the New York Stock Exchange. Eagle Materials Inc. has no parent company, and no

vi

publicly held company has a 10% or greater ownership interest in Eagle Materials Inc.

Petitioner Republic Paperboard Company LLC is a limited liability company organized and existing under the laws of the State of Delaware, and has its principal office in Lawton, Oklahoma. Republic Paperboard Company LLC is a wholly-owned subsidiary of Eagle Materials Inc., a corporation organized and existing under the laws of the State of Delaware. The common stock of Eagle Materials Inc. is publicly traded and listed on the New York Stock Exchange. Eagle Materials Inc. has no parent company, and no publicly held company has a 10% or greater ownership interest in Eagle Materials Inc.

Petitioner Western Farmers Electric Cooperative has no parent corporations, and no shareholders own 10% or more of its stock.

vii

**STATEMENT OF RELATED PROCEEDINGS**

The following proceedings are directly related to this case within the meaning of Rule 14.1(b)(iii):

- *Utah v. EPA*, No.23-9509 (10th Cir.);

- *PacifiCorp v. EPA*, No.23-9512 (10th Cir.);

- *Utah Associated Mun. Power Sys. v. EPA,* No.23-9520 (10th Cir.);

- *Oklahoma v. EPA,* No.23-9514 (10th Cir.);

- *Okla. Gas & Elec. Co. v. EPA*, No.23-9521 (10th Cir.);

- *Tulsa Cement LLC v. EPA*, No.23-9533 (10th Cir.);

- *W. Farmers Elec. Coop. v. EPA*, No.23-9534 (10th Cir.);

- *Utah v. EPA*, No.23-1102 (D.C. Cir.) (protective petition);

- *Oklahoma v. EPA*, No.23-1103 (D.C. Cir.) (protective petition);

viii

- *Okla. Gas & Elec. Co. v. EPA*, No.23-1105 (D.C. Cir.) (protective petition);

- *Tulsa Cement LLC v. EPA*, No.23-1106 (D.C. Cir.) (protective petition);

- *W. Farmers Elec. Coop. v. EPA*, No.23-1107 (D.C. Cir.) (protective petition);

- *PacifiCorp v. EPA*, No.23-1112 (D.C. Cir.) (protective petition).

ix

## TABLE OF CONTENTS

QUESTION PRESENTED ........................................ i

PARTIES TO THE PROCEEDINGS ....................... ii

CORPORATE DISCLOSURE STATEMENTS ........ iv

STATEMENT OF RELATED PROCEEDINGS ..... vii

PETITION FOR WRIT OF CERTIORARI ................1

DECISION BELOW ...................................................4

JURISDICTION ........................................................5

STATUTORY AND REGULATORY
  PROVISIONS INVOLVED ....................................5

STATEMENT OF THE CASE ...................................5

    A.  Legal Background ......................................5

    B.  Factual And Procedural Background.........8

REASONS FOR GRANTING THE PETITION .......22

    I.   As The Tenth Circuit Acknowledged, Its
        Transfer Decision Created A Circuit Split
        Over The Question Presented.......................22

    II.  It Is Imperative That This Court Decide The
        Question Presented Now, Just As It Did In
        Analogous  Circumstances  In  *National
        Association Of Manufacturers*.......................27

    III. The Tenth Circuit Wrongly Decided The
        Question Presented .......................................35

CONCLUSION........................................................41

x

## TABLE OF APPENDICES

APPENDIX A — OPINION OF THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT, FILED FEBRUARY 27, 2024................................................1a

APPENDIX B — OPINION OF THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT, FILED FEBRUARY 16, 2024........................................... 18a

APPENDIX C — RELEVANT STATUTORY PROVISIONS........................................................ 26a

xi

# TABLE OF AUTHORITIES

## Cases

*Am. Rd. & Transp. Builders Ass'n v. EPA*,
    705 F.3d 453 (D.C. Cir. 2013)........................ 36, 37

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014)........................................... 6, 7

*Harrison v. PPG Indus., Inc.*,
    446 U.S. 578 (1980)..........................3, 7, 27, 28, 33

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)............................................... 30

*Kentucky v. EPA*,
    No.23-3216, Dkt.39-2
    (6th Cir. July 25, 2023)....................18, 22, 24, 26,
                    35, 36, 37, 38, 39, 40

*Mercantile Nat'l Bank at Dallas v. Langdeau*,
    371 U.S. 555 (1963)....................................... 30, 31

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001)............................ 5

*Motor Vehicle Mfrs. Assn. of United States, Inc. v.
    State Farm Mut. Automobile Ins. Co.*,
    463 U.S. 29 (1983).............................................. 40

xii

*Nat'l Cable & Telecomm. Ass'n v. Brand X*
  *Internet Servs.,*
  545 U.S. 967 (2005)............................................. 40

*National Association of Manufacturers v.*
  *Department of Defense,*
  583 U.S. 109 (2018)..............................3, 27, 33, 34

*Navarro Sav. Ass'n v. Lee,*
  446 U.S. 458 (1980)............................................. 30

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016).............................. 25

*Texas v. EPA,*
  No.23-60069, 2023 WL 7204840
  (5th Cir. May 1, 2023) (per curiam) ...... 17, 22, 24,
                                          25, 32, 35, 36,
                                          37, 38, 39, 40

*Train v. Nat. Res. Def. Council, Inc.,*
  421 U.S. 60 (1975)............................................. 5, 6

*Union Elec. Co. v. EPA,*
  427 U.S. 246 (1976).................................... 6, 7, 18

*West Virginia v. EPA,*
  90 F.4th 323 (4th Cir. 2024).......16, 22, 24, 25, 26,
                                     35, 37, 38, 39, 40, 41

**Statutes And Rules**

28 U.S.C. § 1254 ........................................................ 5

xiii

28 U.S.C. § 2112 .................................................... 34

42 U.S.C. § 7401 ............................................. 5, 6, 32

42 U.S.C. § 7408 ....................................................... 5

42 U.S.C. § 7409 ................................................ 5, 28

42 U.S.C. § 7410 ....................5, 6, 7, 8, 11, 28, 29, 35,
36, 38, 40, 41

42 U.S.C. § 7491 ..................................................... 29

42 U.S.C. § 7607 .............i, 1, 2, 5, 7, 8, 13, 22, 32, 34,
35, 37, 38, 39

Fed. R. App. 15 ..................................................... 40

Fed. R. Civ. P. 12................................................... 29

Sup. Ct. R. 10 ............................................. 23, 28, 35

**Other Authorities**

80 Fed. Reg. 65,292 (Oct. 26, 2015) ........................... 8

87 Fed. Reg. 9,798 (Feb. 22, 2022).................... 11, 12

87 Fed. Reg. 20,036 (Apr. 6, 2022)........................... 13

87 Fed. Reg. 31,470 (May 24, 2022) ................. 11, 36

88 Fed. Reg. 9,336 (Feb. 13, 2023)............. 12, 13, 36,
37, 38, 39

xiv

88 Fed. Reg. 36,654 (June 5, 2023).......................... 13

88 Fed. Reg. 49,295 (July 31, 2023)........................ 16

88 Fed. Reg. 67,102 (Sept. 29, 2023) ...................... 16

EPA, *NAAQS Table* (last updated Feb. 7, 2024) .... 29

EPA, *Regional Haze Program* (last updated Apr.
    20, 2023) ............................................................ 29

## PETITION FOR WRIT OF CERTIORARI

Section 307(b)(1) of the Clean Air Act ("CAA") establishes the venue for challenging certain Environmental Protection Agency ("EPA") actions, including EPA decisions on state implementation plans ("SIPs") submitted by individual States. A "locally or regionally applicable" action must be venued in "the appropriate [regional] circuit," whereas a "nationally applicable" action (or an action where EPA makes a valid determination of "nationwide scope or effect") is venued in the D.C. Circuit. 42 U.S.C. § 7607(b)(1).

Here, the States of Utah and Oklahoma challenged EPA's disapprovals of their SIPs for the interstate transport of ozone. Because the States, along with affected Industry Petitioners, challenged only the SIP disapprovals for Utah and Oklahoma, they naturally filed their challenges in the Tenth Circuit, the regional circuit where those States are located. Other States and their local industries followed the same approach, similarly challenging EPA's disapprovals of other individual States' ozone-transport SIPs in the Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits, respectively.

EPA, however, believes that all of these challenges should have been brought only in the D.C. Circuit and so requested transfer all of the challenges

2

to that venue.  To support its transfer requests, EPA
argued that its decision to pack multiple disapprovals
of individual state plans into a single *Federal Register*
notice, along with references to its preferred and
allegedly consistently applied methodology, rendered
all of the SIP disapprovals, together, a single
"nationally applicable" action reviewable only in the
D.C. Circuit.  42 U.S.C. § 7607(b)(1).

The Courts of Appeals' dispositions of EPA's
motions to transfer have resulted in a clear circuit
split as to whether the States or EPA are correct on
the Question Presented: whether EPA's packaging of
SIP disapprovals together and purported use of a
consistent methodology renders all such SIPs a single
national action that must be challenged only in the
D.C. Circuit.  On one side of the split, the Fourth,
Fifth, Sixth, and Eighth Circuits agree with
Petitioners' approach, holding that the local circuits
are the proper venue for challenging EPA's SIP
disapprovals.  These courts correctly answered the
Question Presented, explaining that SIPs are
quintessentially "locally or regionally applicable"
actions because they are state-specific in nature, *id.*—
regardless of how EPA packages or how allegedly
consistent EPA acts in evaluating those SIPs.  The
Tenth Circuit, however, agreed with EPA, concluding
that the D.C. Circuit is the only proper venue for the
challenges to the Utah SIP and Oklahoma SIP
disapprovals.  The Tenth Circuit explicitly rejected

3

the reasoning of its sister circuits, while relying upon the dissenting opinions in those cases. Finally, the Ninth and Eleventh Circuits both have the Question Presented pending before them.

This Court should grant review to resolve this important circuit split, while bringing order to the chaos that the split created.

As this Court has previously recognized in the context of Section 307(b)(1)—the provision at issue here—"determining the locus of judicial review of the actions of EPA" is "importan[t]" enough to justify a grant of certiorari. *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 586 (1980). Clarity over preliminary matters such as venue is essential for the orderly litigation of important federal issues, and questions of the appropriate venue to challenge EPA action on SIPs regularly arise, given the frequency with which States submit SIPs to EPA and the balance of federal and state authority in the CAA.

This circuit split, arising in the context of ongoing litigation over twelve ozone-transport SIP disapprovals, calls out for immediate review and is analogous to the petition that this Court granted in *National Association of Manufacturers v. Department of Defense ("NAM")*, 583 U.S. 109 (2018). In *NAM*, the Sixth Circuit and district courts took different positions as to the proper federal forum for

4

adjudicating ongoing challenges to a rule issued by EPA under the Clean Water Act. Here, like in *NAM*, there is a split over the proper federal forum—but this time for challenges to disapprovals of ozone-transport SIPs that EPA only lumped together in a single *Federal Register* notice at the final rule stage—with the split here being more pronounced. Absent immediate review from this Court, challenges to the ozone-transport SIP disapprovals of ten sovereign States will be adjudicated in regional circuits, whereas the SIP disapprovals of Utah's and Oklahoma's ozone-transport SIPs will be decided by the D.C. Circuit. In other words, absent this Court's review, important rights of either two *or* ten sovereign States will be adjudicated in the wrong venue.

This Court should bring order to this chaos by granting this Petition.

## DECISION BELOW

The Tenth Circuit's February 27, 2024, decision granting in part EPA's motions to dismiss or transfer and directing transfer is unreported but is available at 2024 WL 799356 and is reproduced at Pet.App.1a–17a.

5

## JURISDICTION

The Tenth Circuit entered its order granting in part EPA's motions to dismiss or transfer and directing transfer on February 27, 2024. Pet.App.1a–17a. This Court has jurisdiction to review that order under 28 U.S.C. § 1254(1).

## STATUTORY AND REGULATORY PROVISIONS INVOLVED

The relevant portions of 42 U.S.C. § 7607 and 42 U.S.C. § 7410 are set forth at Pet.App.26a–32a.

## STATEMENT OF THE CASE

### A. Legal Background

The CAA creates a cooperative federalism regime to regulate air pollution. *See* 42 U.S.C. § 7401; *Michigan v. EPA,* 268 F.3d 1075, 1083 (D.C. Cir. 2001); *accord Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975) ("[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the [CAA], the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation."). Congress directed EPA to establish national ambient air quality standards ("NAAQS") for pollutants, such as ozone, *see* 42 U.S.C. §§ 7408–09, and then gave States the

6

lead responsibility to develop programs to regulate air quality to meet the NAAQS, *id.* § 7410(a)(1); *accord id.* § 7401(a)(3) ("air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments").

A State meets its CAA responsibilities by creating a SIP, which must include provisions that satisfy the State's interstate-transport obligations under Section 110 of the CAA. *See Union Elec. Co. v. EPA,* 427 U.S. 246, 249–50 (1976); *see generally* 42 U.S.C. § 7410(a). A State has "wide discretion in formulating" a SIP, *Union Elec.,* 427 U.S. at 250, and "is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation," "so long as the ultimate effect of [the] State's choice of emission limitations is compliance with the national standards for ambient air," *Train,* 421 U.S. at 79. As relevant here, Section 110 provides that "upwind States" must "reduce emissions to account for pollution exported beyond their borders" that "contribute[s] significantly" to downwind States' compliance. 42 U.S.C. § 7410(a)(2)(D); *see also EPA v. EME Homer City Generation, L.P.,* 572 U.S. 489, 499 (2014). Specifically, a SIP must "contain adequate provisions . . . prohibiting . . . any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will . . . contribute significantly to nonattainment in, or interfere with maintenance by, any other State with

7

respect to any ... [NAAQS]." 42 U.S.C.
§ 7410(a)(2)(D).

To ensure that the SIP complies with the CAA,
EPA must review each State's proposed SIP on an
individual basis. *Id.* § 7410(k)(3); *Union Elec.*, 427
U.S. at 250. EPA "shall approve" a SIP if it "meets all
the applicable requirements" of the Act. 42 U.S.C.
§ 7410(k)(3); *see Union Elec.*, 427 U.S. at 250. If EPA
determines that a State has failed to submit an
adequate SIP, EPA must promulgate a "Federal
implementation plan" ("FIP") for the State within two
years of that determination, "unless the State corrects
the deficiency" before EPA issues a FIP. 42 U.S.C.
§ 7410(c)(1); *see EME Homer,* 572 U.S. at 498.

Section 307(b)(1) establishes the appropriate
venue for a petition for review challenging EPA action
under the CAA, including petitions challenging EPA's
approval or disapproval of SIPs. 42 U.S.C.
§ 7607(b)(1); *see Harrison*, 446 U.S. at 584–85.
Section 307(b)(1) provides three venue pathways.
Section 307(b)(1)'s first sentence provides that a
petition for review challenging "nationally applicable
. . . final action taken[ ] by the Administrator . . . may
be filed only in the United States Court of Appeals for
the District of Columbia." 42 U.S.C. § 7607(b)(1).
Section 307(b)(1)'s second sentence provides that "a
petition for review of the Administrator's action in
approving or promulgating any implementation plan"

8

or other final agency action that is "locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.* Finally, Section 307(b)(1)'s third sentence creates an alternative venue pathway for challenges to a local or regional action that nevertheless has a nationwide scope or effect, notwithstanding the action's local or regional nature. *Id.* Under this third sentence, the D.C. Circuit is the proper venue for a petition challenging EPA's local/regional action if that action "is based on a determination of nationwide scope or effect . . . and if in taking such action the Administrator finds and publishes that such action is based on such a determination." *Id.* This third venue pathway requires a court to determine *both* that EPA made a determination of nationwide scope or effect *and* that the local or regional action is actually based upon a determination of nationwide scope and effect. *Id.*

## B. Factual And Procedural Background

1. In 2015, EPA lowered the NAAQS for ground-level ozone, for which $NO_x$ is a precursor, to 70 parts per billion. 80 Fed. Reg. 65,292 (Oct. 26, 2015). That triggered the States' duty to develop and submit SIPs to meet this new NAAQs within three years, by 2018. *See* 42 U.S.C. § 7410(a)(1).

9

Following EPA's publication of the 2015 ozone NAAQS, the State of Utah developed its ozone-transport SIP to comply with this NAAQS. Joint Deferred App., Vol. I at 0074–112, Nos.23-9509, *et al.*, Doc.11037455 (10th Cir. Oct. 17, 2023) (hereinafter "JDA"). Utah closely collaborated with EPA for over a year to develop this SIP, with EPA commenting on drafts of Utah's SIP. *See* JDA, Vol. I at 0069–73. EPA encouraged Utah to follow approaches discussed in certain EPA guidance and recommended that Utah elaborate on certain components in its SIP. *See* JDA, Vol. I at 0072, 0146. After incorporating this feedback from EPA, Utah concluded in its SIP that its contributions to downwind-state air quality were not significant and, therefore, that additional emission reductions in Utah were not necessary. *See* JDA, Vol. I at 0092–100 (Utah's SIP). This conclusion relied upon state- and region-specific facts and analyses relating to Utah's unique topographical, geographical, and meteorological characteristics. JDA, Vol. I at 0097–100, 0147 & nn.7–8, 10; JDA, Vol. II at 0183 & n.1, 0195–96. For example, Utah considered the significant and outsized impact of uncontrollable sources of ozone like wildfires and international emissions on Colorado, the downwind State most likely to be affected by emissions from Utah. JDA, Vol. I at 0097–98. Utah submitted its proposed SIP to EPA on October 24, 2019. JDA, Vol. I at 0089. Two months later, EPA made an incompleteness determination on the SIP, alleging

10

that Utah had not provided adequate public notice. 84 Fed. Reg. 66,612 (Dec. 5, 2019). Utah then submitted a revised SIP the next month after providing additional opportunities for public participation. JDA, Vol. I at 0074–75.

Oklahoma submitted its SIP on October 25, 2018. Joint Deferred App., Vol. I at 0133, Nos.23-9521, *et al.*, Doc.11041131 (10th Cir. Nov. 1, 2023) (hereinafter "J. App'x"). In its SIP, Oklahoma concluded that in-state sources would not contribute significantly to downwind nonattainment or maintenance issues in any other State, based on the State's holistic review of multiple local and regional factors impacting the "significance" of the State's contributions. J. App'x, Vol. I at 0170–73. Oklahoma's analysis centered on the State's unique meteorological features and the special characteristics of its electricity generation market, relying in part on regional modeling developed to address some of the regional meteorological conditions affecting ozone formation and accounting for recent trends in regional ozone emissions. J. App'x, Vol. I at 0168–73. Oklahoma likewise made state-specific judgments regarding modeling performance, contribution thresholds, and trends at specific downwind receptors in analyzing its interstate transport obligations. J. App'x, Vol. I at 0175–77.

11

2. After an unexplained (and unlawful, 42 U.S.C. § 7410(k)(2)) delay of more than two years, EPA proposed to disapprove Utah's SIP. 87 Fed. Reg. 31,470 (May 24, 2022); JDA, Vol. I at 0130. In proposing to disapprove Utah's SIP, EPA disagreed with Utah's determination that sources within Utah did not significantly contribute to nonattainment of the 2015 NAAQS for ozone for certain areas in Colorado. 87 Fed. Reg. at 31,483. To reach that conclusion, EPA disagreed with each of the state- and region-specific findings that Utah had made in its SIP submission, *see id.* at 31,477, 31,482, as well as with Utah's state-specific analysis justifying the threshold Utah had chosen for determining significant contribution, *id.* at 31,478. So, for example, EPA dismissed Utah's conclusion that "contributions from other sources, including international or non-anthropogenic emissions," were important considerations for the overall impact to Colorado as an "excuse" by Utah to avoid addressing its own emissions. *Id.* at 31,482.

EPA similarly delayed acting on Oklahoma's SIP submission, proposing disapproval in a separate, regionally limited *Federal Register* notice over three years after the State's submittal. 87 Fed. Reg. 9,798 (Feb. 22, 2022). The substance of EPA's analysis focused on the local and regional matters at the core of Oklahoma's SIP submission, finding that Oklahoma's assessment of a higher contribution

12

threshold was not adequately justified, rejecting
Oklahoma's analysis of collective contribution, and
finding technical flaws in Oklahoma's analysis of
specific downwind receptors using a state-developed
regional pollution model. *See id.* at 9,818–24.

After evaluating Utah's and Oklahoma's SIPs
separately in proposed disapprovals, on February 13,
2023, EPA combined its final disapprovals of Utah's
SIP and Oklahoma's SIP within a single *Federal
Register* notice that also included disapprovals of 19
other SIPs and a deferral on two other States' SIPs.
88 Fed. Reg. 9,336, 9,337–38, 9,354 (Feb. 13, 2023).
EPA made clear that it judged each SIP "in light of
the facts and circumstances of each particular state's
submission." *Id.* at 9,340; *see also id.* at 9,354 ("[T]he
contents of each individual state's submission were
evaluated on their own merits[.]").   For EPA's
disapprovals of Utah's SIP and Oklahoma's SIP, in
particular, EPA provided only "a brief, high level
overview" in the form of one-paragraph analyses that
largely reiterated and incorporated EPA's points in its
proposed disapprovals of Utah's SIP and Oklahoma's
SIP.  *Id.* at 9,354, 9,359–60.

EPA then asserted that any challenges to any of
its SIP disapprovals included in this *Federal Register*
notice must be filed in the D.C. Circuit under the first
sentence of Section 307(b)(1) because EPA's actions
were "nationally applicable" or, in the alternative,

13

under the third sentence of Section 307(b)(1) because EPA had made a finding of "nationwide scope or effect." *Id.* at 9,380–81 (quoting 42 U.S.C. § 7607(b)(1)).

3. On April 6, 2022—before EPA had disapproved Utah's SIP and Oklahoma's SIP—EPA proposed to issue FIPs for Utah and Oklahoma, in addition to issuing FIPs for 21 other States. 87 Fed. Reg. 20,036, 20,038 (Apr. 6, 2022). On June 5, 2023, EPA published a final rule imposing those FIPs on Utah and Oklahoma, as well as on the 21 other States. 88 Fed. Reg. 36,654, 36,656 (June 5, 2023). EPA set the effective date of these FIPs for August 4, 2023. *Id.* at 36,654. This Court recently heard oral argument on emergency applications to stay these FIPs filed by the States of Ohio, Indiana, and West Virginia, nationwide industry organizations, and other parties. *Ohio v. EPA*, No.23A349 (U.S. Feb. 21, 2024).

4. Petitioners are the Utah Industry Petitioners, who are industry members with significant interests in Utah, and the Oklahoma Industry Petitioners, who are industry members with significant interests in Oklahoma. *See generally* Pet.App.9a. The Utah Industry Petitioners filed their petitions for review in the Tenth Circuit challenging EPA's disapproval of Utah's SIP and, separately, the Oklahoma Industry Petitioners filed their petitions for review in the Tenth Circuit challenging EPA's disapproval of

14

Oklahoma's SIP. Pet.App.9a.[1] The States of Utah and Oklahoma also filed their own separate petitions for review in the Tenth Circuit, likewise challenging EPA's disapproval of their own SIPs. *See* Pet.App.9a. In these petitions for review, Petitioners, Utah, and Oklahoma specified that they were challenging only EPA's disapprovals of Utah's SIP and Oklahoma's SIP, respectively.[2] Thus, Petitioners, Utah, and Oklahoma asserted that venue for their respective challenges was appropriate in the Tenth Circuit, under Section 307(b)(1).

---

[1] *See* Pet., *PacifiCorp v. EPA*, No.23-9512, Doc.10979118 (10th Cir. Feb. 23, 2023); Pet., *Utah Associated Mun. Power Sys. v. EPA*, No.23-9520, Doc.10983701 (10th Cir. Mar. 15, 2023); Pet., *Okla. Gas & Elec. Co. v. EPA*, No.23-9521, Doc.10983983 (10th Cir. Mar. 16, 2023); Pet., *Tulsa Cement LLC v. EPA*, No.23-9533, Doc.10991428 (10th Cir. Apr. 13, 2023); Pet., *W. Farmers Elec. Coop. v. EPA*, No.23-9534, Doc.10991510 (10th Cir. Apr. 13, 2023).

[2] *See* Pet. at 2, *Utah v. EPA*, No.23-9509, Doc.10976607 (10th Cir. Feb. 13, 2023); Pet. at 2, *PacifiCorp*, No.23-9512, Doc.10979118; Pet. at 2, *Utah Associated Mun. Power Sys.*, No.23-9520, Doc.10983701; Pet. at 2, *Oklahoma v. EPA,* No.23-9514, Doc.10980562 (10th Cir. Mar. 2, 2023); Pet. at 2, *Okla. Gas & Elec. Co.*, No.23-9521, Doc.10983983; Pet. at 2, *Tulsa Cement LLC*, No.23-9533, Doc.10991428; Pet. at 2, *W. Farmers Elec. Coop.*, No.23-9534, Doc.10991510.

15

In addition to filing petitions for review in the Tenth Circuit, Petitioners, Utah, and Oklahoma filed protective petitions in the D.C. Circuit. *See* Pet. at 2, *Utah v. EPA*, No.23-1102, Doc.1994857 (D.C. Cir. Apr. 13, 2023); *see also* Pet. at 3–4, *Oklahoma v. EPA,* No.23-1103, Doc.1994881 (D.C. Cir. Apr. 13, 2023); Pet. at 2, *Okla. Gas & Elec. Co. v. EPA*, No.23-1105, Doc.1994865 (D.C. Cir. Apr. 14, 2023); Pet. at 2, *Tulsa Cement LLC v. EPA*, No.23-1106, Doc.1994912 (D.C. Cir. Apr. 14, 2023); Pet. at 2, *W. Farmers Elec. Coop. v. EPA*, No.23-1107, Doc.1994920 (D.C. Cir. Apr. 14, 2023); Pet. at 2, *PacifiCorp v. EPA*, No.23-1112, Doc.1995594 (D.C. Cir. Apr. 14, 2023).  After motions practice where EPA attempted to force Petitioners to litigate their protective petitions on the merits in the D.C. Circuit, the D.C. Circuit ordered that these protective petitions be held in abeyance.  Order, *Utah*, Nos.23-1102, *et al.*, Doc.2005201 (D.C. Cir. June 27, 2023) (per curiam).

Thereafter, the parties and the Tenth Circuit engaged in extensive venue and stay proceedings. After EPA moved the Tenth Circuit to transfer venue for the petitions to the D.C. Circuit, Pet.App.9a,[3] the Tenth Circuit—Judges Tymkovich, Bacharach, and

---

[3] In each of EPA's venue-transfer motions discussed in this Petition, EPA also moved, in the alternative, for dismissal for improper venue.

16

Rossman—entered an order referring EPA's motions to transfer venue to the merits panel.  Order, *Utah*, Nos.23-9509, *et al.*, Doc.10994985 (10th Cir. Apr. 27, 2023).  Then, on July 27, 2023, the Tenth Circuit—Judges Tymkovich and Carson—granted motions to stay the disapprovals of Utah's SIP and Oklahoma's SIP, finding that "petitioners have satisfied their burden as to each" of the stay factors.  Order at 4, *Utah*, Nos.23-9509, *et al.*, Doc.11016742 (10th Cir. July 27, 2023).  The Tenth Circuit ordered, and the parties subsequently completed, full briefing on the merits, *see* Order at 3–4, *Utah*, Nos.23-9509, *et al.*, Doc.11002290 (10th Cir. Apr. 30, 2023); Minute Order, *Utah*, Nos.23-9509, *et al.*, Doc.11038946 (10th Cir. Oct. 25, 2023), with the Court setting the case for oral argument on March 21, 2024, Notice, *Utah*, Nos.23-9509, *et al.*, Doc.11058134 (10th Cir. Jan. 10, 2024).

5. Meanwhile, ten other States and/or their local industries challenged EPA's disapprovals of their ozone-transport SIPs in their regional circuits.  *See* 88 Fed. Reg. 49,295, 49,296–97 (July 31, 2023); 88 Fed. Reg. 67,102, 67,103–04 (Sept. 29, 2023).

In the Fourth Circuit, the State of West Virginia challenged EPA's disapproval of West Virginia's SIP. *West Virginia v. EPA*, 90 F.4th 323, 325 (4th Cir. 2024).  West Virginia moved to stay EPA's disapproval as to West Virginia's SIP, and EPA

17

moved to transfer the petition to the D.C. Circuit. *Id.*
After oral argument on these issues, the Fourth
Circuit rejected EPA's transfer motion, holding that it
was the appropriate venue under Section 307(b)(1)'s
second sentence, *id.* at 327–31, and stayed EPA's
disapproval as to West Virginia's SIP, *id.* at 331–32.
The parties have not yet concluded merits briefing.

In the Fifth Circuit, the States of Texas,
Mississippi, and Louisiana, along with local industry,
challenged EPA's disapproval of Texas's SIP,
Mississippi's SIP, and Louisiana's SIP. *Texas v. EPA*,
No.23-60069, 2023 WL 7204840, at *3 (5th Cir. May
1, 2023) (per curiam). The challengers moved to stay
EPA's disapprovals, and EPA moved to transfer to the
D.C. Circuit. *Id.* (addressing stay motions as to
Texas's SIP and Louisiana's SIP, as well as EPA's
transfer motion as to all petitions); Order, *Texas*,
No.23-60069, Dkt.359 (5th Cir. June 8, 2023)
(addressing stay motion as to Mississippi's SIP). The
Fifth Circuit rejected EPA's transfer motion, holding
in a detailed opinion that the regional circuit court
was the appropriate venue, *Texas*, 2023 WL 7204840,
at *3–6, and then it stayed EPA's disapprovals as to
Texas's SIP, Louisiana's SIP, and Mississippi's SIP,
*id.* at *6–11; Order, *Texas*, No.23-60069, Dkt.359.
The parties have concluded merits briefing on the
petitions, and the Fifth Circuit heard oral argument
on December 4, 2023. *See* Notice, *Texas*, No.23-60069,
Dkt.511 (5th Cir. Dec. 4, 2023).

18

In the Sixth Circuit, the Commonwealth of Kentucky challenged EPA's disapproval of Kentucky's SIP. Order at 1, *Kentucky v. EPA*, No.23-3216, Dkt.39-2 (6th Cir. July 25, 2023). Kentucky moved to stay EPA's disapproval, and EPA moved to transfer the petition to the D.C. Circuit. *Id.* at 1–2. The Sixth Circuit held that it was the appropriate venue and so denied EPA's motion, *id.* at 2–6, and then it stayed EPA's disapproval, *id.* at 6–9. The parties have concluded merits briefing, and the Sixth Circuit has set oral argument for May 8, 2024. Notice, *Kentucky*, No.23-3216, Dkt.80 (6th Cir. Mar. 11, 2024).

In the Eighth Circuit, the States of Arkansas and Missouri, as well as industry members and other entities in Minnesota, separately challenged EPA's disapprovals of Arkansas's SIP, Missouri's SIP, and Minnesota's SIP. *See* Pet., *Arkansas v. EPA*, No.23-1320, Doc.5246849 (8th Cir. Feb. 16, 2023); Pet., *Missouri v. EPA*, No.23-1719, Doc.5265074 (8th Cir. Apr. 13, 2023); Pet., *Allete, Inc. v. EPA*, No.23-1776, Doc.5265614 (8th Cir. Apr. 14, 2023) (Minnesota).[4]

---

[4] *See also* Pet., *Union Elec. Co. v. EPA*, No.23-1751, Doc.5265392 (8th Cir. Apr. 13, 2023); Pet., *Sw. Elec. Power Co. v. EPA*, No.23-1765, Doc.5265470 (8th Cir. Apr. 14, 2023); Pet., *City Utils. of Springfield v. EPA*, No.23-1774, Doc.5265562 (8th Cir. Apr. 14, 2023); Pet., *Hybar, LLC v. EPA*, No.23-1777,

19

These challengers moved to stay EPA's disapprovals, and EPA moved to transfer. *See, e.g.,* Mot. to Transfer or Dismiss, *Arkansas*, No.23-1320, Doc.5256958 (8th Cir. Mar. 20, 2023). The Eighth Circuit denied EPA's transfer motions, *see, e.g.*, Order, *Arkansas*, No.23-1320, Doc.5269098 (8th Cir. Apr. 25, 2023); Order, *Missouri*, No.23-1719, Doc.5281126 (8th Cir. May 26, 2023); Order, *Allete*, No.23-1776, Doc.5281229 (8th Cir. May 26, 2023), and then stayed EPA's disapprovals as to Arkansas's SIP, Missouri's SIP, and Minnesota's SIP, *see, e.g.*, Order, *Arkansas*, No.23-1320, Doc.5280996 (8th Cir. May 25, 2023); Order, *Missouri*, No.23-1719, Doc.5281126 (8th Cir. May 26, 2023); Order, *Allete*, No.23-1776, Doc.5292580 (8th Cir. July 5, 2023). The parties have concluded merits briefing, and the Eighth Circuit has not yet set an oral argument date.

In the Ninth Circuit, an industry member in Nevada challenged EPA's disapproval of Nevada's SIP. Pet., *Nevada Cement Co. v. EPA*, No.23-682, Dkt.1 (9th Cir. Apr. 14, 2023). That industry member moved to stay EPA's disapproval, and EPA moved to transfer to the D.C. Circuit. Order, *Nevada Cement Co.*, No.23-682, Dkt.27.1 (9th Cir. July 3, 2023). The

---

Doc.5265597 (8th Cir. Apr. 14, 2023); Pet., *Ark. League of Good Neighbors v. EPA*, No.23-1778, Doc.5265611 (8th Cir. Apr. 14, 2023).

20

Ninth Circuit referred EPA's transfer motion to the merits panel and then stayed EPA's disapproval as to Nevada's SIP. *Id.* at 1–2. The State of Nevada was also then granted permission to intervene in support of the industry member. *Id.* at 1. The Ninth Circuit has temporarily closed the docket for administrative purposes until May 6, 2024, to allow the parties to engage in mediation. Order, *Nevada Cement Co.*, No.23-682, Dkt.40.1 (9th Cir. Dec. 6, 2023); Notice, *Nevada Cement Co.*, No.23-682, Dkt.43 (9th Cir. Feb. 28, 2024).[5]

Finally, in the Eleventh Circuit, the State of Alabama, along with two industry members, challenged EPA's disapproval of Alabama's SIP. Pet., *Alabama v. EPA*, No.23-11173, Dkt.1 (11th Cir. Apr. 13, 2023); Pet., *Ala. Power Co. v. EPA*, No.23-11196, Dkt.1 (11th Cir. Apr. 14, 2023). These challengers moved to stay EPA's disapproval, *see* Order, *Alabama*, Nos.23-11173, -11196, Dkt.33-2 (11th Cir. Aug. 17, 2023), and the Eleventh Circuit requested *sua sponte* that the parties address the question of whether the challenges were properly before that court, Jurisdictional Question, *Alabama*, Nos.23-11173, -11196, Dkts.9-1, 9-2 (11th Cir. Apr. 28, 2023). In

---

[5] The State of Nevada also filed a petition for review in the D.C. Circuit. Pet., *Nevada v. EPA*, No.23-1113, Doc. 1995624 (D.C. Cir. Apr. 14, 2023).

21

response, the challengers argued that the Eleventh
Circuit was the proper court to hear their challenges,
Joint Resp., *Alabama*, Nos.23-11173, -11196, Dkt.13
at 1 (11th Cir. May 5, 2023), while EPA requested
that the Eleventh Circuit transfer the challenges to
the D.C. Circuit, EPA Resp., *Alabama*, Nos.23-11173,
-11196, Dkt.14 at 1 (11th Cir. May 12, 2023).  The
Eleventh Circuit referred the question to the merits
panel, Order, *Alabama*, Nos.23-11173, -11196, Dkt.24
(11th Cir. July 12, 2023), and then stayed EPA's
disapproval as to Alabama's SIP, Order, *Alabama*,
Nos.23-11173, -11196, Dkt.33-2.  The parties have
concluded merits briefing, and the Eleventh Circuit
has not yet set oral argument.

6. About a month before the oral argument date
that the Tenth Circuit had set for the Utah and
Oklahoma cases, the merits panel of the Tenth
Circuit—Judges Moritz, Ebel, and Rossman—granted
EPA's motion to transfer to the D.C. Circuit.
Pet.App.18a–25a (granting motion to transfer, while
indicating that a decision directing transfer would
issue in due course); Pet.App.1a–17a (directing
transfer, while providing the merits panel's
reasoning).  The Tenth Circuit held that the D.C.
Circuit was the appropriate venue under
Section 307(b)(1)'s first sentence, while declining to
opine on the application of Section 307(b)(1)'s third
sentence.  Pet.App.9a–11a, 17a n.8.  The Tenth
Circuit held that EPA's actions here are "nationally

22

applicable" because EPA "disapprov[ed] SIPs from 21 states across the country," while "appl[ying] a uniform statutory interpretation and common analytical methods." Pet.App.11a. The Tenth Circuit "recognize[d] that the Fourth, Fifth, and Sixth Circuits recently reached the contrary conclusion: each denied the EPA's motions to transfer petitions challenging the same final rule at issue here." Pet.App.15a (citing *West Virginia,* 90 F.4th at 331; *Texas,* 2023 WL 7204840, at *1; and Order at 6, *Kentucky,* No.23-3216, Dkt.39-2). "But in [the Tenth Circuit's] view, all three courts strayed from § 7607(b)(1)'s text and instead applied a petition-focused approach that [the Tenth Circuit] and other circuits have rejected." Pet.App.15a. The Tenth Circuit also noted that "[t]he Eighth Circuit also denied the EPA's transfer motions, but [the Eighth Circuit] simply issued summary orders containing no analysis." Pet.App.15a n.6 (citing Order, *Arkansas,* No.23-1320, Doc.5269098).

## REASONS FOR GRANTING THE PETITION

## I. As The Tenth Circuit Acknowledged, Its Transfer Decision Created A Circuit Split Over The Question Presented

There is an acknowledged circuit split over the Question Presented, with the Tenth Circuit on the one side, and multiple other circuits squarely on the

23

other.  This division of authority satisfies this Court's standard for granting certiorari.  Sup. Ct. R. 10(a).

The Tenth Circuit below held that EPA could transform a locally or regionally applicable final action on a SIP into a nationally applicable action—thereby making the D.C. Circuit the only venue to hear petitions challenging that action, under Section 307(b)(1)—by packaging that action with other actions on other SIPs and using a consistent methodology in analyzing the SIP submittals. Pet.App.10a–12a.  As the Tenth Circuit explained, EPA's packaged actions here are "nationally applicable" in its view because EPA "disapprov[ed] SIPs from 21 states across the country," while "appl[ying] a uniform statutory interpretation and common analytical methods, which required the agency to examine the overlapping and interwoven linkages between upwind and downwind states in a consistent manner."  Pet.App.11a.  The Tenth Circuit concluded that EPA's disapprovals of Utah's SIP and Oklahoma's SIP were nationally applicable actions despite the fact that EPA issued separate "proposed rules" and "could have chosen to issue standalone final SIP disapprovals" for each of these States. Pet.App.12a (emphasis omitted).   In the Tenth Circuit's view, the action here is "a nationally applicable final rule . . . disapproving SIPs from 21 states across the country—not just one—because

24

those states failed to meet their good-neighbor obligations." Pet.App.12a.

The Fourth, Fifth, Sixth, and Eighth Circuits squarely split with the Tenth Circuit over the Question Presented, as the Tenth Circuit recognized. Pet.App.15a & n.7 (citing *West Virginia*, 90 F.4th at 331; *Texas*, 2023 WL 7204840, at *1; Order, *Kentucky*, No.23-3216, Dkt.39-2; *Arkansas*, No. 23-1320 (8th Cir. Apr. 25, 2023)).

The Fifth Circuit decided the issue first, holding that EPA's disapprovals are locally or regionally applicable actions under Section 307(b)(1), notwithstanding the fact that EPA "packaged the[ ] disapprovals together with the disapprovals of [ ] other States" in a single *Federal Register* notice. *Texas*, 2023 WL 7204840, at *3–6. "[T]he CAA makes clear that the EPA's relevant actions for purposes of" determining the appropriate venue under Section 307(b)(1) "are its various SIP denials." *Id.* at *4. The Fifth Circuit also rejected EPA's alternative argument that venue is proper in the D.C. Circuit under Section 307(b)(1)'s third sentence, concluding that the "SIP disapprovals at issue here were plainly based on a number of intensely factual determinations unique to each State," not on "a determination of nationwide scope or effect." *Id.* at *5 (citations omitted). This holding follows from the Fifth Circuit's previous decision in *Texas v. EPA*, 829

25

F.3d 405 (5th Cir. 2016), where it similarly held that EPA's disapprovals of Oklahoma's and Texas's regional-haze SIPs were not "based on any determinations that have nationwide scope or effect"—and thus were properly challenged in the regional circuit, not the D.C. Circuit—because EPA based those disapprovals on "a number of intensely factual determinations." *Id.* at 419–24. Judge Douglas dissented from the Fifth Circuit's venue holding, taking the same approach that the Tenth Circuit later adopted in this case. *Texas*, 2023 WL 7204840, at *11–13 (Douglas, J., dissenting).

The Fourth Circuit has taken the same approach to the Fifth Circuit on the Question Presented, issuing a published opinion after holding oral argument. *West Virginia*, 90 F.4th 323. The Fourth Circuit held that EPA's disapprovals of each State's SIP "was based entirely on [each State's] particular circumstances and its analysis of those circumstances," meaning those disapprovals were "locally or regionally applicable." *Id.* at 329 (Niemeyer, J., joined by Quattlebaum, J.) (referencing West Virginia's SIP, in particular). Thus, "the relevant agency action" for Section 307(b)(1) purposes is "EPA's disapproval of [each State's] SIP[,] [a]nd the fact that the EPA consolidated its disapprovals in a single final rule does not, by that fact alone, make its 21 separate decisions included within its final rule either a single nationally applicable action or one

26

based on a determination of nationwide scope or effect." *Id.* at 330. Finally, Section 307(b)(1) "does not focus on whether national standards were applied," but rather on "whether the final action is nationally applicable"; otherwise "there never could be a local or regional action . . . because every action of the EPA purportedly applies a national standard created by the national statute and its national regulations." *Id.* at 329–30. Judge Thacker dissented, generally taking the same view as the Tenth Circuit on the Question Presented. *Id.* at 332–35 (Thacker, J., dissenting).

The Sixth Circuit has taken the same approach as the Fourth and Fifth Circuits. Order, *Kentucky*, No.23-3216, Dkt.39-2. It too concluded that the "relevant unit of administrative action here is EPA's individual SIP denials" and that EPA's "packag[ing]" of each State's disapproval with other States "doesn't matter." *Id.* at 4 (McKeague & Nalbandian, JJ.) (referencing Kentucky's SIP, in particular). Further, it concluded that each SIP disapproval was locally or regionally applicable "[b]ecause the denial and legal impact of [each State's] SIP affects only [that State]." *Id.* at 5. Finally, the Sixth Circuit rejected EPA's claim that the SIP disapprovals were "based on a determination of nationwide scope or effect." *Id.* at 5–6. Judge Cole dissented, and he too took similar views as the Tenth Circuit on the Question Presented. *Id.* at 10–19 (Cole, J., dissenting).

27

Finally, the Eighth Circuit also rejected EPA's Section 307(b)(1) venue arguments in cases challenging individual ozone-transport SIP disapprovals, unlike the Tenth Circuit. The Eighth Circuit issued multiple separate orders for each State, without providing substantive analysis. *See, e.g.*, *Arkansas*, No.23-1320 (8th Cir. Apr. 25, 2023); *Missouri*, 23-1719 (8th Cir. May 26, 2023); *Allete*, No. 23-1776 (8th Cir. May 26, 2023) (Minnesota); *supra* pp.18–19.

## II.  It Is Imperative That This Court Decide The Question Presented Now, Just As It Did In Analogous Circumstances In *National Association Of Manufacturers*

The Question Presented is unquestionably of national "importance," as "determining the locus of judicial review of the actions of EPA" under Section 307(b)(1), *Harrison*, 446 U.S. at 586, is essential to the orderly and timely resolution of challenges to EPA decisions on SIPs. Further, the Court should resolve this important venue issue now, before the D.C. Circuit adjudicates Petitioners' challenges to the disapprovals of Utah's SIP and Oklahoma's SIP, just as this Court resolved a similar jurisdictional dispute in a similar posture in *NAM* in 2018.

A. Whether EPA's disapproval of a SIP is a locally or regionally applicable action challengeable in the

28

appropriate regional circuit or may be transformed into a nationally applicable action challengeable only in the D.C. Circuit through EPA's packaging the disapproval with other SIP denials in a single *Federal Register* notice, while using an allegedly consistent methodology, is an important question that this Court should answer. Sup. Ct. R. 10(a).

This Court has already recognized in the context of Section 307(b)(1), the same provision at issue here, that questions over "the locus of judicial review of the actions of EPA" are sufficiently "important[t]" to justify this Court's review. *Harrison*, 446 U.S. at 586. Congress has the power to decide the method for challenging EPA action in the lower federal courts, including by determining which circuit is the proper venue to hear such challenges. *See id.* at 592–93. So, when disputes over the proper interpretation of statutes like Section 307(b)(1) arise, this Court "must determine what Congress intended," out of the respect owed to congressional authority. *See id.* at 593.

States and others challenging SIP disapprovals (or approvals) need to know where they may challenge these EPA actions. States must submit SIPs to EPA every time EPA promulgates a new NAAQS, and EPA must review each of its six NAAQS every five years to determine whether a new, more-stringent standard is necessary. *See* 42 U.S.C. §§ 7409, 7410(a)(1); EPA,

29

*NAAQS Table* (last updated Feb. 7, 2024).[6]  States must also submit SIPs to EPA to comply with the CAA's "Regional Haze Program," which has spawned dozens of individual SIP cases across the country. 42 U.S.C. §§ 7410(a)(2)(D)(II), 7491; EPA, *Regional Haze Program* (last updated Apr. 20, 2023).[7]  And States must seek EPA approval for any SIP revisions needed to implement newly adopted regulations.  42 U.S.C. § 7410(k)(5).  Thus, the question of venue for challenging SIP disapprovals or approvals is of great practical importance for many future EPA actions.

Parties knowing at the outset in which federal court to bring their lawsuits, including challenges to EPA actions on SIPs, is essential to the orderly and timely resolution of federal-court litigation.  That is why, for example, the Federal Rules of Civil Procedure provide that a responding party must raise objections to venue at the earliest stages of a case, or else waive such venue challenges.  *See* Fed. R. Civ. P. 12(h)(1) (referencing Fed. R. Civ. P. 12(b)(3), among other subsections).  A lack of clarity over procedural matters like "the preliminary question of venue," *Mercantile Nat'l Bank at Dallas v. Langdeau*,

---

[6] Available at https://www.epa.gov/criteria-air-pollutants/naaqs-table (all websites last visited Mar. 27, 2024).

[7] Available at https://www.epa.gov/visibility/regional-haze-program.

30

371 U.S. 555, 558 (1963), "eat[s] up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims," *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citation omitted); *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n.13 (1980). Without such clarity, courts may be overburdened with venue-transfer motions, while also risking reversal on non-merits grounds on appeal after the conclusion of proceedings in the original federal court. *See Hertz Corp.*, 559 U.S. at 94; *Mercantile Nat'l Bank*, 371 U.S. at 558.

The ongoing litigation occurring in circuits across the country over EPA's disapprovals of twelve ozone-transport SIPs powerfully demonstrates the importance of the Question Presented. In each of these cases, States and/or their industries challenged EPA's individual SIP disapprovals in seven different regional circuits, under Section 307(b)(1)'s second sentence. *Supra* pp.16–21. Then, EPA requested that each of these seven regional circuits transfer the petitions to the D.C. Circuit, prompting corresponding oppositions from each of the twelve States and their industry challengers. *Supra* pp.16–21. Several of these circuit courts have had to spend considerable resources adjudicating a hotly contested dispute over "the preliminary question of venue." *Mercantile Nat'l Bank*, 371 U.S. at 558; *accord Hertz Corp.*, 559 U.S. at 94; *Navarro Sav. Ass'n*, 446 U.S. at 464 n.13. And if any of these regional circuits

31

incorrectly decide this venue question under Section 307(b)(1), the parties risk subsequent reversal on these non-merits grounds after the conclusions of the merits proceedings on the petitions. *Mercantile Nat'l Bank*, 371 U.S. at 558.

The extensive proceedings in the present case are particularly illustrative of the harms that parties and courts suffer from the lack of clarity as to proper venue. Petitioners, Utah, Oklahoma, and EPA fully briefed the venue question during motions practice before the Tenth Circuit, and then the Tenth Circuit deferred ruling on that issue and issued stays without mentioning the question of venue. *Supra* pp.13–16. Meanwhile, Petitioners, Utah, and Oklahoma litigated with EPA over their protective petitions for review filed in the D.C. Circuit, with EPA attempting to force litigation on the merits in the D.C. Circuit even though these parties only filed there protectively. *Supra* pp.13–16. The parties in the Tenth Circuit then fully briefed the complex merits of Petitioners' challenges, as well as re-briefing the venue question, only to have the Tenth Circuit order transfer of venue to the D.C. Circuit one month before the Tenth Circuit was set to hear oral argument. *Supra* pp.13–16, 21–22.

Finally, this Court's review of the Question Presented is also important to uphold the choice of Congress in Section 307(b)(1) to empower the States

32

and others to challenge EPA's SIP denials individually in their local, regional circuit, rather than funneling all such challenges *en masse* to the D.C. Circuit for treatment as a national issue. *See* 42 U.S.C. § 7607(b)(1). With Section 307(b)(1), Congress empowered challengers of EPA's SIP denials to bring their challenges to the appropriate regional circuit, not the D.C. Circuit, thus allowing fulsome circuit-court review of individual SIPs and leveraging the regional circuits' comparative expertise vis-à-vis the D.C. Circuit over the local/regional issues inherent in such SIP denials. *Accord Texas*, 2023 WL 7204840, at *4; 42 U.S.C. § 7401(a)(3) ("[A]ir pollution . . . at its source is the primary responsibility of States and local governments[.]"). This is an important procedural right under the CAA, given the frequency with which the Act requires States to submit SIPs to EPA for approval and EPA's obligation to approve all SIPs that meet CAA requirements, as discussed above. *Supra* pp.6–7, 28–29.

B. It is imperative that this Court resolve the Question Presented now, rather than after a merits ruling on Petitioners' petitions in the D.C. Circuit, given the delay and waste of litigation resources caused by the circuit split here, as well as the unfairness of forcing litigation over the disapprovals of only Utah's and Oklahoma's ozone-transport SIPs into the D.C. Circuit, while other States and their supporting industries get to litigate in their regional

33

circuits, as is their statutory right. *See Harrison*, 446 U.S. at 586 (granting certiorari review before final judgment to review dispute over Section 307(b)(1)).

The context of this circuit split, arising out of ongoing litigation over EPA's disapprovals of twelve States' ozone-transport SIPs, calls out for this Court's immediate review. Unless this Court grants immediate review of the Tenth Circuit's venue decision, only the disapprovals of Utah's SIP and Oklahoma's SIP will, in all likelihood, be reviewed by the D.C. Circuit, while the ozone-transport SIP disapprovals for ten other States will be reviewed by the appropriate regional circuits. *See supra* pp.13–22. So, unless this Court resolves the circuit split now, either the important CAA rights of two States or of ten States will be adjudicated in the wrong federal forum under Section 307(b)(1).

In this respect, the Question Presented is analogous to the situation that this Court faced in *NAM*. There, this Court resolved a dispute over "which federal court" had jurisdiction over challenges to an EPA rule under the Clean Water Act: the circuit courts, or the district courts. *NAM*, 583 U.S. at 113–14. As the Court explained, under the Administrative Procedure Act, parties may generally file challenges to final EPA actions in the federal district courts. *Id.* at 114. But the Clean Water Act contains its own judicial-review provision that "enumerates seven

34

categories of EPA actions for which review lies directly and exclusively in the federal courts of appeals." *Id.* (citation omitted). After EPA promulgated the rule at issue, various parties challenged it both in the federal district courts and—due to "[u]ncertainty" over the Clean Water Act's judicial-review provision—in various Courts of Appeals. *Id.* at 119. The Sixth Circuit (in which the circuit-court challenges had been consolidated, 28 U.S.C. § 2112(a)(3)) held that the circuit courts had original jurisdiction over such challenges by denying motions to dismiss for lack of jurisdiction, while one district court had concluded that the district courts had original jurisdiction. *Id.* at 119–20 (also noting that other district courts had taken the Sixth Circuit's view). This Court granted certiorari to review the Sixth Circuit's interlocutory order denying the motions to dismiss for improper venue, and thereafter settled the division between the Sixth Circuit and a district court over the correct federal court to hear challenges to EPA's rule. *Id.* at 113–20. Further, the Court determined to resolve this split even after EPA proposed to rescind the rule at issue. *Id.* at 120 n.5.

Like in *NAM*, the Question Presented here asks "which federal court" may hear challenges to certain actions by the EPA, *id.* at 113–14, either the appropriate regional circuit or the D.C. Circuit, 42 U.S.C. § 7607(b)(1). And, like in *NAM*, there is a division of authority over this question—although the

35

division of authority in this case is even clearer than in *NAM*, as here multiple circuits have divided over the Question Presented.  *See* Sup. Ct. R. 10(a).

## III. The Tenth Circuit Wrongly Decided The Question Presented

A. Petitioners' challenges to EPA's disapprovals of Utah's SIP and Oklahoma's SIP belong in the Tenth Circuit—"the appropriate circuit"—because those EPA actions are only "locally or regionally applicable" under Section 307(b)(1)'s second sentence, while Section 307(b)(1)'s third sentence does not alter the applicable-venue analysis.  42 U.S.C. § 7607(b)(1).

The "relevant actions" for purposes of Section 307(b)(1)'s venue analysis are EPA's "various SIP denials."  *Texas*, 2023 WL 7204840, at *4; *see also West Virginia*, 90 F.4th at 330; Order at 3–4, *Kentucky*, No.23-3216, Dkt.39-2.  That is because the CAA provides that EPA must approve or disapprove "*each State's* SIP."  *Texas*, 2023 WL 7204840, at *4 (citing 42 U.S.C. § 7410(k)(3)); *see also West Virginia*, 90 F.4th at 330 (Section 7410(k)(3)'s use of "'plan' in the singular" indicates that EPA "acts on *each plan*"); Order at 3–4, *Kentucky*, No.23-3216, Dkt.39-2.  That is what EPA did here: it "separately considered and disapproved" each SIP.  *Texas*, 2023 WL 7204840, at *4 (emphasis omitted); *see also West Virginia*, 90 F.4th at 330.  For example, for Utah's SIP

36

disapproval, EPA considered and rejected Utah's reliance on "contributions from other sources, including international or non-anthropogenic emissions," to Colorado, concluding that these did not "excuse Utah from addressing its own significant contribution to nonattainment or interference with maintenance at downwind areas." 87 Fed. Reg. at 31,482; 88 Fed. Reg. at 9,359–60 (incorporating these conclusions). And for Oklahoma's SIP disapproval, EPA determined that the regional modeling cited by Oklahoma was "technically flawed" and rejected Oklahoma's analysis of site-specific factors impacting attainment at downwind receptors. 88 Fed. Reg. at 9,359–60.

EPA's decisions on submitted SIPs—including a disapproval of a SIP—"are the prototypical locally or regionally applicable action that may be challenged only in the appropriate regional court of appeals," as courts have long held. *Texas*, 2023 WL 7204840, at *4 (citations omitted); *see also, e.g.*, *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (Kavanaugh, J.); Order at 5, *Kentucky*, No.23-3216, Dkt.39-2. Section 307(b)(1)'s second sentence itself recognizes this, as it provides that a "petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title"—*the Section governing SIPs*—"or any other final action of the Administrator . . . which is locally or regionally applicable may be filed *only* in

37

the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1) (emphasis added); *see Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455 (Kavanaugh, J.).

EPA's disapprovals of the States' SIPs in the *Federal Register* notice here, including Utah's SIP and Oklahoma's SIP, belong to the prototypical category of SIP denials and so are locally or regionally applicable actions. *Texas*, 2023 WL 7204840, at *4; *West Virginia*, 90 F.4th at 328–31; Order at 4–5, *Kentucky*, No.23-3216, Dkt.39-2. EPA's disapprovals of Utah's SIP and Oklahoma's SIP involve only the regulation of Utah and Oklahoma emissions sources. *Texas*, 2023 WL 7204840, at *5; Order at 5, *Kentucky*, No.23-3216, Dkt.39-2. EPA disapproved the SIPs by assessing "the local and regional circumstances of each of the 21 States" and based the disapprovals on those circumstances, while "giving a unique mixture of reasons for each rejection, even though some of the individual reasons overlapped." *West Virginia*, 90 F.4th at 330 (emphasis omitted); *see also id.* at 328–29 ("[EPA] focused on the data particular to [each State] and the analyses that [each State] conducted with respect to those state-specific data"); 88 Fed. Reg. at 9,340, 9,354 ("[EPA assessed each SIP] in light of the facts and circumstances of each particular state's submission"; "the contents of each individual state's submission were evaluated on their own merits"). That is why, in denying Utah's SIP and

38

Oklahoma's SIP, EPA directed parties to "consult" EPA's previous individually issued, state-specific proposed disapprovals for the basis for each SIP disapproval. 88 Fed. Reg. at 9,359–60.

Finally, EPA's alternative determination under Section 307(b)(1)'s third sentence that the disapprovals of Utah's SIP and Oklahoma's SIP were "based on a determination of nationwide scope or effect," 42 U.S.C. § 7607(b)(1); 88 Fed. Reg. at 9,380–81, is invalid. Thus, Section 307(b)(1)'s third sentence does not change the appropriate venue here. *Texas*, 2023 WL 7204840, at *5; *West Virginia*, 90 F.4th at 328–31; Order at 5–6, *Kentucky*, No.23-3216, Dkt.39-2. Again, SIP disapprovals are "usually highly fact-bound and particular to the individual State," rather than based on a determination of nationwide scope or effect, given the Clean Air Act's requirement that EPA separately approve or disapprove each SIP. *Texas*, 2023 WL 7204840, at *5 (citations omitted); *see* Order at 5–6, *Kentucky*, No.23-3216, Dkt.39-2; 42 U.S.C. § 7410(k)(3). And here, EPA's SIP disapprovals were "based on a number of intensely factual determinations unique to each State," not on a determination of nationwide scope or effect. *Texas*, 2023 WL 7204840, at *5 (citations omitted); *see West Virginia*, 90 F.4th at 328–31; Order at 5–6, *Kentucky*, No.23-3216, Dkt.39-2. EPA explained here that it considered each SIP "in light of the facts and circumstances of each particular state's submission,"

39

*Texas*, 2023 WL 7204840, at *5 (emphasis omitted) (quoting 88 Fed. Reg. at 9,340); *see West Virginia*, 90 F.4th at 329; Order at 6, *Kentucky*, No.23-3216, Dkt.39-2. There was no new nationwide rule or "determination" being applied in the final *Federal Register* notice. EPA merely incorporated its separate and state-specific proposed disapprovals into that single publication. *West Virginia*, 90 F.4th at 330–31; Order at 6, *Kentucky*, No.23-3216, Dkt.39-2.

B. The Tenth Circuit held that EPA's disapprovals of Utah's SIP and Oklahoma's SIP were nationally applicable under Section 307(b)(1) because the single *Federal Register* notice contained two "features": EPA disapproved "SIPs from 21 states across the country," and EPA "applied a uniform statutory interpretation and common analytical methods." Pet.App.11a. But neither of these features make EPA's disapprovals nationally applicable under Section 307(b)(1).

EPA's chosen method of publishing or labeling the action—whether out of administrative convenience, its desire to choose the litigation forum, or for some other reason—does "not define the relevant 'action' for § 7607(b)(1)'s purposes" and "isn't controlling" on the question of whether EPA's action is nationally applicable or locally/regionally applicable. *Texas*, 2023 WL 7204840, at *3 n.3, *4 (citations omitted); *see*

40

Fed. R. App. 15 (a)(2)(C) (providing that parties may challenge only "part" of an agency's "order"). Instead, the "relevant agency action" here for purposes of Section 307(b)(1) is EPA's disapproval of each SIP, *West Virginia*, 90 F.4th at 330, given the source of EPA's authority under the CAA, *Texas*, 2023 WL 7204840, at *4; 42 U.S.C. § 7410(k)(3); Order at 3–4, *Kentucky*, No.23-3216, Dkt.39-2. The Tenth Circuit, with all respect, did not adequately consider the import of EPA's statutory source of authority here, even as it addressed the Fourth, Fifth, and Sixth Circuits' decisions on different points. *See* Pet.App.11a–17a.

Second, the Section 307(b)(1) analysis does not turn on whether EPA "applied a uniform and nationally consistent approach to the SIPs that it disapproved." *West Virginia*, 90 F.4th at 329 (citations omitted). EPA must generally apply a consistent approach or methodology in acting on SIPs—after all, an "[u]nexplained inconsistency" would render those actions unlawfully arbitrary. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967, 981 (2005) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 46–57 (1983)). Thus, the claimed consistency of EPA's approach to reviewing SIPs is routine and does not affect the appropriate venue for actions that turn on local facts and circumstances and involve the

41

application of individual state discretion and judgment. Section 307(b)(1) "does not focus on whether national standards were applied," but rather on "whether the final action is nationally applicable, as opposed to locally or regionally applicable." *West Virginia*, 90 F.4th at 329. Indeed, "if application of a national standard to disapprove a plan were the controlling factor, there never could be a local or regional action . . . because every action of the EPA purportedly applies a national standard." *Id.* Regardless, EPA's review of an individual SIP, in particular, will necessarily be locally or regionally applicable, even if EPA applies a claimed uniform standard, given the state-specific nature both of SIPs and of the CAA's grant of authority to the States. *See* 42 U.S.C. § 7410(k)(3). EPA's analyses of Utah's SIP and Oklahoma's SIP here are cases in point, as EPA relied upon intensely local or regional considerations to disapprove these SIPs. *Supra* pp.37–38.

## CONCLUSION

This Court should grant the Petition.

42

Respectfully submitted,

MEGAN BERGE
SARAH DOUGLAS
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
megan.berge@bakerbotts.com

J. MARK LITTLE
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
*Attorneys for the
Oklahoma Industry
Petitioners*

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
EMILY A. O'BRIEN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
misha.tseytlin@troutman.com

MARIE BRADSHAW
DURRANT
*Assistant General
Counsel*
CHRISTIAN C. STEPHENS
*Senior Attorney*
PACIFICORP
1407 North Temple
Suite 320
Salt Lake City, UT 84116
*Attorneys for PacifiCorp*

43

STEVEN J. CHRISTIANSEN
DAVID C. REYMANN
PARR BROWN GEE
& LOVELESS
101 South 200 East
Suite 700
Salt Lake City, UT 84111
(801) 532-7840
schristiansen@parrbrown.com
dreymann@parrbrown.com
*Attorneys for Deseret
Generation &
Transmission Co-
Operative*

CARROLL WADE
MCGUFFEY III
MELISSA HORNE
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree St. N.E.
Suite 3000
Atlanta, GA 30308
*Attorneys for PacifiCorp*

H. MICHAEL KELLER
ARTEMIS D. VAMIANAKIS
FABIAN VANCOTT
95 South State Street
Suite 2300
Salt Lake City, UT 84111
(801) 531-8900
mkeller@fabianvancott.com
avamianakis@fabian
vancott.com
*Attorneys for Utah
Associated Municipal
Power Systems*

44

ALAN I. ROBBINS
DEBRA D. ROBY
THOMAS B. STEIGER III
WASHINGTON ENERGY
LAW LLP
900 17th St. NW
Suite 500-A
Washington, D.C. 20006
(703) 785-9270
arobbins@washington
energylaw.com
droby@washington
energylaw.com
tsteiger@washington
energylaw.com
*Attorneys for Utah
Municipal Power Agency*

EMILY L. WEGENER
*General Counsel*
UTAH ASSOCIATED
MUNICIPAL POWER
SYSTEMS
155 North 400 West
Suite 480
Salt Lake City, UT 84103
(801) 566-3938
emily@uamps.com
*Attorneys for Utah
Associated Municipal
Power Systems*

March 2024